**Truett ALFORD and Walter Nierlich, Plaintiffs,**

v.

**CITY OF LUBBOCK, TEXAS and Texas Municipal Retirement System, Defendants.**

**Civ. A. No. CA–5–78–64.**

United States District Court,
N. D. Texas,
Lubbock Division.

Dec. 18, 1979.

Thomas J. Griffith, Lubbock, Tex., for plaintiffs.

John C. Ross, Jr., City Atty.; James P. Brewster, Trial Atty., Donald G. Vandiver, Lubbock, Tex., for City of Lubbock, Tex.

Gaynor Kendall, Austin, Tex., for Texas Municipal Retirement System.

## MEMORANDUM

WOODWARD, Chief Judge.

The above case came on to be heard by the court without a jury on the 3rd and 4th days of December, 1979, with all parties and attorneys present. After hearing and considering the evidence, arguments of counsel, and the briefs and pleadings of the parties, the court files this memorandum which shall constitute the court's findings of fact and conclusions of law to support the judgment hereinafter ordered. In addition, the court adopts the stipulations of the parties, as contained in the record of this case, as a portion of the court's findings of fact. This case arises under 29 U.S.C. §§ 621–34 and the Fourteenth Amendment, therefore this court has jurisdiction pursuant to 28 U.S.C. § 1331.

Plaintiff, Truett Alford, was born on December 28, 1912 and was first employed by the City of Lubbock, Texas on March 16, 1965 at fifty-two years of age. After twelve years and ten months of employment, on December 31, 1977, Mr. Alford was retired by the City in accordance with its policy of retiring all employees at the end of the calendar year in which they attain their sixty-fifth birthday.

Plaintiff, Walter Nierlich, was born on May 3, 1912 and commenced his employment with the City as a carpenter in the Parks and Recreation Department in May or June of 1962 after he had attained his fiftieth birthday. Mr. Nierlich was also retired by the City of Lubbock on December 31, 1977 in accordance with this policy of retiring all employees at the end of the calendar year in which they reach sixty-five years of age.

Both Mr. Alford and Mr. Nierlich had satisfactory records of employment with the City of Lubbock, Texas, had been regularly given merit pay raises, and the court finds that at the time of their retirement on December 31, 1977 each was fully capable of performing the tasks to which each had been regularly assigned.

On July 27, 1950, the City of Lubbock elected to have all employees of the city government, except for the Fire Department, participate in the Texas Municipal Retirement System as same had been previously authorized by the Legislature of the State of Texas (Ordinance 1006, Deft's Ex. 3). The Texas Municipal Retirement System (TMRS) is set forth in Article 6243h of Vernon's Annotated Texas Statutes and allows participation by all municipal employees except those who begin employment after age fifty. This system was originally enacted in 1947 and was substantially revised by the Texas Legislature in 1949. Further, there have been amendments to the TMRS almost every legislative session since that time. Moreover, the provision in TMRS that any city employee who was employed after reaching the age of fifty would not be eligible to become a member of the system has been consistently carried forward in all of the amendments until recently when the age was raised to fifty-five. To be eligible to receive the pensions provided for under TMRS a city employee must have completed at least fifteen years of credible service and have attained the age of sixty. There are other conditions under which an employee may receive benefits under the Act but they are not applicable to the fact situation of the two plaintiffs in this case. The Act further provides that each city employee shall be retired from employment by all municipalities on the last day of the calendar year in which the age of sixty-five is attained, or on the last day of the calendar year in which he completes fifteen years of credible service, whichever shall last occur. Accordingly, the City has never enrolled in the TMRS any employee who was hired after reaching the age fifty and has, but with only one known exception, required the employee to retire at the end of the calendar year in which he or she reached sixty-five. The one exception was an accountant for the Municipal Airport who was retained beyond the age of sixty-five in order to train a replacement during a period in which the airport was being constructed. This exception was authorized by the Act but has no bearing on the facts in this case.

Accordingly, the two plaintiffs in this case, who were each employed after the age of fifty, were required to retire on December 31, 1977 but they were not afforded any rights under TMRS. It should be noted that because of his age and being allowed to work until December 31, 1977, Mr. Nierlich worked over fifteen years but Mr. Alford's employment was less than fifteen years. During their entire period of employment, the City did not deduct from either plaintiff's pay check the five percent contribution required by TMRS by the employee nor has the City ever contributed the ten percent required of the city-employer for each employee who is a member of TMRS.

In 1968 Mr. Alford had inquired about his eligibility for retirement and again in 1974 did so, retaining an attorney to assist him. Mr. Nierlich made similar attempts to secure retirement benefits in 1974 but each of the plaintiffs was informed that they would not be accepted as members of TMRS and that they were not eligible to receive any pension benefits. Nothing further was done by these plaintiffs until the filing of this suit after their retirement.

Employees of the City of Lubbock have certain benefits, which are not required by nor included in TMRS, as follows:

(a) Increases in stability or longevity pay were uniformly given and were applicable to employees hired before and after the age of fifty.

(b) Vacation periods were annually granted to the employees, regardless of the age at which they were employed. Further, upon retirement or separation when reaching the age of sixty-five the employee received pay for certain unused vacation time. The plaintiffs in this case received such unused vacation pay when they left the City's employment although they contend that it was tendered late. The court finds, however, that the accrued vacation pay was paid to the plaintiffs in a timely fashion.

(c) The premiums on certain medical and hospitalization insurance policies were paid

by the City for all of its employees regardless of their age at the time of their employment.

(d) A group life insurance program was available to the employees, which was geared to the employee's salary, and could later be converted to a life vesting program. At the time of retirement or separation upon reaching the age of sixty-five without retirement the employee was given a paid-up policy based upon a percentage of the employee's salary. Each plaintiff in this case received such a policy as did the employees who retired with the benefits of TMRS.

(e) Pay for holidays, military leave, and similar benefits were uniformly paid to all employees regardless of the age at which they were employed.

(f) All employees, regardless of the age at which they were employed, were granted fifteen days sick leave per year which could be accumulated. When an employee who had been hired before the age of fifty and was a member of TMRS retired, however, this employee was paid for ninety days of sick leave provided he had previously accumulated same. An employee hired over the age fifty was not given pay for such accumulated sick leave when that employee retired at the age of sixty-five. Therefore, in effect, the two plaintiffs in this case because of their age were not given all of the benefits of employment as were those who were members of TMRS and employed under the age of fifty. The court concludes that the right to receive accrued sick leave upon reaching the age of sixty-five is an emolument of employment as much as a regular pay check would be.

■ The plaintiffs contend that the defendants have discriminated against them because of their age as shown by the above facts. Because this court is of the opinion that the plaintiffs have timely filed their complaint soon after the denial of certain retirement benefits the court will consider the questions presented. Problems with laches and statute of limitations do not bar this suit because the plaintiffs' cause of action did not arise until the benefits were denied beginning in January of 1978.

The questions before this court therefore are whether any of the acts of the defendants are in violation of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621–34; are in violation of Texas statutory guidelines; or are a denial of equal protection under the Fourteenth Amendment and the Texas Constitution. The court would like to point out, however, that since the time this cause of action arose the age limits in the TMRS have been raised by five years each, from fifty and sixty-five to fifty-five and seventy. Therefore, the court will not make any ruling on the present limitations because they are not before the court in this matter. The questions are rather, whether the former limitations affected the plaintiffs in a discriminatory manner.

The ADEA provides standards and guidelines to be applied in cases of alleged age discrimination. The purpose of the Act is to promote the employment of older persons based on their ability rather than age and to prohibit arbitrary age discrimination. *Hodgson v. First Federal Savings & Loan Association*, 455 F.2d 818, 820 (5th Cir. 1972). Section 623(a) of the Act makes it unlawful for an employer to discriminate against an individual because of age. This provision, however, is limited in two respects. At the time this cause of action arose, Section 631 limited the prohibition in the chapter to persons between forty and sixty-five (the upper age limit is now seventy). Additionally Section 623(f) provides that an employer may observe a bona fide seniority or benefit plan such as a retirement, pension, or insurance plan as long as it is not a subterfuge to avoid the purposes of the Act.

■ The court will first consider the failure of the City to pay accrued sick leave to the plaintiffs. The court is of the opinion that this practice does discriminate against the plaintiffs and is in violation of the ADEA. The City cannot find relief in Section 623(f), the exemption section, because the policy is not part of any retirement or

benefit plan. The practice is an unequal treatment of employees hired after the age of fifty and cannot find approval under the ADEA. A judgment awarding the plaintiffs their accrued sick leave as of December 31, 1977 will be entered together with appropriate interest. Of course, judgment for the accrued sick leave would not be against the TMRS but only against the City of Lubbock.

The refusal of the defendants to allow the plaintiffs to become members of the TMRS must now be considered. The plaintiffs contend that the refusal of the defendants to allow them to participate in the TMRS is a violation of the Equal Protection Clause of the Fourteenth Amendment, the ADEA, Article One, Section Three of the Texas Constitution and also Article 6252–14 of the Texas Statutes. The court will deal with these particular contentions separately.

■■■ (a) Article 6252–14 of the Texas Statutes provides that it is the policy of the State of Texas that no person shall be denied the right to work, to earn a living, and to support himself and his family solely because of his age. This particular article was enacted in 1963, some fifteen years after the original creation of the TMRS. The plaintiffs contend that this act impliedly repealed provisions in the TMRS limiting participation to those individuals who began employment under the age of fifty. The court does not accept this argument because any implied repeal would be on very tenuous grounds. Article 6252–14 is general in nature and the TMRS Act is extremely specific, especially regarding age limits. The court will not find a statute to be impliedly repealed unless it is clear that the legislature intended a repeal or there is a positive repugnance between the two statutes. *Goolsby v. Blumenthal,* 581 F.2d 455, 461 (5th Cir. 1978). The court concludes that in this matter such circumstances do not exist. To rule that Article 6252–14 repeals provisions of the TMRS would be an act of judicial legislation which this court does not judge is warranted. Therefore, the court is of the opinion that Article 6252–14 does not repeal any of the provisions of the TMRS Act and that the TMRS Act is left intact and is unaffected by the subsequent enactment of Article 6252–14.

■■■ (b) The plaintiffs also contend that the combination of the provisions disallowing entry into the plan after the age of fifty and the forced·retirement at the age of sixty-five creates a subterfuge of the purpose of the ADEA within the ambit of Section 623(f). Indeed, they claim that instead of a bona fide benefit plan which may be lawfully observed, there is no plan regarding these plaintiffs and at age sixty-five they are not retired but rather forcibly discharged. The court is not convinced by this argument and is of the opinion that the TMRS is not a subterfuge of the ADEA. The plaintiffs would have this court give a very wide and liberal reading to the ADEA which the court cannot accept. This court must give a plain reading to the words of the statute and believes that in using the word subterfuge Congress intended that there must be some intent to evade the ADEA. The TMRS was created in 1947 well before the enactment of the ADEA and this court does not find that the statutory plan enacted in the TMRS was a subterfuge to evade the purposes of the ADEA. *See United Air Lines, Inc. v. McMann,* 434 U.S. 192, 203, 98 S.Ct. 444, 450, 54 L.Ed.2d 402 (1977); *Brennan v. Taft Broadcasting Co.,* 500 F.2d 212, 215, (5th Cir. 1974). Therefore, the court is of the opinion that the TMRS is not in violation of any of the provisions of the ADEA and that the ADEA does not change or alter the TMRS in any way.

■■ (c) The remaining question involves whether the refusal of the TMRS and the City to allow the plaintiffs to participate in the TMRS is a denial of equal protection under the Fourteenth Amendment and under Article One, Section Three of the Texas Constitution. These two constitutional provisions will be dealt with jointly because of their similarity in meaning and impact. *See Interpretative Commentary,* 1. Tex. Const.Ann. 218–220. For the City and the TMRS to come under such scrutiny, how-

ever, state action is required because the Fourteenth Amendment only restricts state action. *Burton v. Wilmington Parking Authority,* 365 U.S. 715, 721, 81 S.Ct. 856, 859, 6 L.Ed.2d 45 (1961). Certainly, state action is involved in this case. The exclusion of the plaintiffs from the TMRS by the defendants was pursuant to the TMRS Act which was passed by the state legislature. The dependence of the defendants upon the statute cannot be denied and surely their actions constitute state action. *Cf. id.,* at 722, 81 S.Ct. at 860.

In a case of denial of equal protection based upon age discrimination this court must look to see if the statute involved can sustain scrutiny under the rational basis test. *Massachusetts Board of Retirement v. Murgia,* 427 U.S. 307, 312, 96 S.Ct. 2562, 2566, 49 L.Ed.2d 520 (1976). The question for this court therefore is not only whether the TMRS Act is discriminatory but also whether classifications established in the statutory scheme are supported by a reasonable and rational purpose. *Id.* at 312, 96 S.Ct. at 2566. The record in this case has been carefully examined by the court and it is now for the court to decide whether or not the facts show a rational basis.

During the course of the trial a great deal of evidence was submitted regarding the capabilities of the plaintiffs in particular and of persons sixty-five years of age in general. The City also put on evidence showing that the jobs that the two plaintiffs performed required at least some physical stamina. Along with that evidence the City showed that as one ages a person declines in his ability to perform, his physical stamina, and in his general capabilities. The City also conceded that some sixty-five year old individuals are quite capable of continuing their employment while others are not. The City further put on evidence to show that retirement at age sixty-five served the City's interest in motivating upward mobility and advancement for its younger workers. From all of these factors, it was the City's position that the age classification it established for retirement was in the public interest and did not deny the plaintiffs equal protection. The court is in agreement and is of the opinion that the City could have rationally concluded that retirement at age sixty-five was rationally related to its interest in effectiveness and economy. *See Johnson v. Lefkowitz,* 566 F.2d 866, 869 (2d Cir. 1977), *cert. denied* 440 U.S. 945, 99 S.Ct. 1421, 59 L.Ed.2d 633.

This finding, however, does not preclude examination of provisions of the TMRS Act which prevented the plaintiffs' participation in the TMRS. The defendants contend that the exclusion of the plaintiffs from the TMRS was actually a service to the plaintiffs. Defendants state that had the plaintiffs been allowed to participate in the TMRS they would have been required to make all the monthly payments up until the age of sixty-five but fail to reap any of the rewards because of insufficient number of years of enrollment in the plan. There is merit to this argument but it fails to state what benefits the plaintiffs received in lieu of the funds paid by the City into the TMRS for those employees who began employment prior to age fifty. It is the position of the plaintiffs that the percentage contributions made by the City into the TMRS for each enrolled employee is as much a part of city salary and emolument as a weekly pay check. Further, plaintiffs claim that when such benefits are given to those employed under the age of fifty, it is mandatory that they be given to those employees hired after age of fifty; otherwise, such action is discriminatory and must be remedied by proper judgment.

Defendants deny that there has been discrimination in this respect and contend that even assuming *arguendo* that such discrimination were to exist, that a rational basis exists for the exclusion of the City employees who were hired after the age of fifty. To support their position that a rational basis exists for the exclusion of the plaintiffs from the TMRS the defendants allege that a pension would not be meaningful to any employee unless the deductions from the employee's salary and the contributions from the City were made over a sufficient period of time to build up the amount of the

pension. Both defendants also contend that the evidence proves that the requirement of fifteen years employment by the City constitutes a reward to an employee for long service. It is the defendants' further contention that the additional cost to the City for inclusion of those employed over age fifty would be prohibitive because of increased administrative expenses to both defendants. The defendants would further show that inclusion of those employees hired after the age of fifty into the TMRS would require the City to reduce its percentage contributions to the TMRS and thereby reduce benefits to all City employees. Finally, the defendants argue that the restrictions of the TMRS such as fifteen years in service rather than at age sixty-five and no enrollment if hired after age fifty, are of legislative determination and that the legislature had a rational basis for these restrictions.

The court finds that the defendants' first two contentions, that the pension would not be meaningful to an employee and that the pension is a reward, are without merit and do not show a rational basis to support the discriminatory denial of pension benefits. Further, the court is not impressed by the argument of the defendants that additional costs to the City and to the TMRS would be so large as to make it uneconomical to enroll persons employed over the age of fifty into the TMRS. Actually, the cost of enrollment of persons hired after the age of fifty into the TMRS would be no more than the cost of enrollment of any other employee. The only additional costs that would be incurred would be when an employee hired after the age of fifty actually reached retirement age. Figures produced at trial show that number to be minimal and the court finds that payment of pension benefits to these individuals would not be so costly to sustain a rational basis for their discriminatory denial. The court does not believe that the City and the TMRS may justify this discriminatory employment practice solely because it may cost the defendants small additional costs. Likewise, the court does not find that the inclusion of persons hired after the age of fifty would require the City to make a percentage reduction in their contributions to the TMRS or a reduction in benefits to City employees. As just stated, the percentage of City workers hired after age fifty is very small. Moreover, the pension plan involved here is a defined contribution plan rather than one that depends upon the contributions of others. Because of this fact the inclusion of individuals hired after the age of fifty would not involve the reduction of pension benefits to others. The defendants' final argument that the restrictions are of legislative determination is without merit also, because even though the restrictions are of legislative determination, they are still subject to judicial scrutiny and the rational basis test. *Murgia, supra,* 427 U.S. at 312, 96 S.Ct. at 2566.

Accordingly, the court is of the opinion that the refusal to enroll the plaintiffs in the TMRS simply because of age was a violation of their equal protection rights under the Fourteenth Amendment. The court finds that their exclusion is not supported by a rational basis and is clearly discriminatory. The court limits its opinion in this regard, however, to the facts before it. Therefore the court finds that the denial of enrollment to the individual plaintiffs with the subsequent denial of pension benefits upon the attainment of the mandatory retirement age of sixty-five was a denial of equal protection. The court makes no ruling with respect to any employee who did not reach the mandatory retirement age while still in the employ of the City. Therefore, it is the order of this court that the plaintiffs tender to the defendants the amount they would have paid into the TMRS during their period of employment with the City had they been enrolled in the TMRS. This amount will be together with interest at six percent per annum. The City is also ordered to pay into the TMRS the amounts they would have contributed for these employees had they been enrolled as members of the TMRS together with interest at six percent beginning with the date such payment ordinarily would have been made. Thereafter, the attorneys for

the plaintiffs and for the defendants are to confer and determine what the proper pension benefits would be for each plaintiff had they been enrolled in the TMRS. Payment of the benefits is to commence once that determination is made. Past unpaid benefits will be paid to the plaintiffs in a lump sum plus interest at six percent per annum.

Additionally, attorney for the plaintiffs has pleaded for attorney's fees. Plaintiffs' attorney seeks the recovery of his fees under 42 U.S.C. § 1988. That statute does not allow for recovery of attorney's fees, however, when recovery is gained under the ADEA or the Equal Protection Clause. Accordingly, the plea for attorney's fees is denied.

Attorneys for both parties are to confer and submit to the court an appropriate judgment in accordance with this opinion. Attorneys are to approve the judgment as to form only.