James K.J. CHENG, Plaintiff-Appellant,

v.

GAF CORPORATION,
Defendant-Appellee.

No. 1116, Docket 82–7956.

United States Court of Appeals,
Second Circuit.

Argued April 13, 1983.

Decided June 23, 1983.

---

Jonathan A. Weiss, Legal Services for the Elderly, New York City, for plaintiff-appellant.

Robert L. Jauvtis, New York City (Epstein, Becker, Borsody & Green, P.C., New York City, of counsel), for defendant-appellee.

Before FEINBERG, Chief Judge, TIMBERS and MESKILL, Circuit Judges.

FEINBERG, Chief Judge:

James K.J. Cheng appeals from a decision of the United States District Court for the Southern District of New York, 566 F.Supp. 350, Richard Owen, J., awarding appellee attorneys' fees and expenses for the costs of defending against appellant's allegedly "unreasonable and vexatious" attempts to disqualify appellee's counsel. For the reasons stated below, we reverse the decision of the district court.

I. Procedural History

An understanding of the unusual procedural history of this case is important both with respect to the threshold issue of appealability, and with respect to the merits of the appeal. Accordingly, we detail that history below at some length.

In 1977, appellant Cheng filed an employment discrimination suit against appellee GAF Corp. (GAF). Appellant was represented by Legal Services for the Elderly Poor (LSEP), and appellee was represented by the law firm of Epstein, Becker, Borsody & Green, P.C. (the Epstein firm). In 1979, an LSEP lawyer named Philip Gassel left LSEP and joined the Epstein firm. Cheng then moved to disqualify the Epstein firm from further representing GAF in this case, alleging that Gassel had been privy to confidential information regarding Cheng's suit. The district court denied the motion, but in August 1980, this court reversed on the basis of the Canons of the American Bar Association Code of Professional Responsibility, finding that there existed a danger of taint and at least the appearance

of impropriety. *Cheng v. GAF Corp.,* 631 F.2d 1052 (2d Cir.1980). In February 1981, the Supreme Court vacated this judgment and remanded, 450 U.S. 903, 101 S.Ct. 1338, 67 L.Ed.2d 327 (1981), citing the intervening case of *Firestone Tire and Rubber Co. v. Risjord,* 449 U.S. 368, 101 S.Ct. 669, 66 L.Ed.2d 571 (1981), which held that denials of motions to disqualify may not be reviewed on appeal until after trial except in special circumstances warranting a writ of mandamus. Before the remand reached this court, appellant moved to have this court consider his appeal nunc pro tunc as a request for mandamus; this motion was summarily denied.

In May 1981, appellant moved again for a disqualification order in the district court. When the district court denied this motion, plaintiff sought a writ of mandamus from this court. This petition was denied in September 1981, and plaintiff's subsequent petition for a writ of certiorari was also denied.

GAF then moved in the district court pursuant to 28 U.S.C. § 1927 [1] for an award of attorneys' fees and costs incurred in defending against Cheng's most recent efforts to disqualify GAF, beginning with Cheng's May 1981 attempt in the district court to renew his original disqualification motion. The district court stated that it was "not prepared to fault plaintiff" for again seeking to disqualify the Epstein firm in the district court. Nonetheless, the district court found that "the subsequent mandamus [to the circuit court] . . . and the subsequent application for a writ of certiorari to the Supreme Court from its denial were frivolous in the extreme and 'unreasonably and vexatiously' multiplied the costs to defendant in this case with no genuine chance of success." Thus, the district judge assessed $1,000 in attorneys' fees, costs and expenses against appellant's lawyer, not for a motion before the district court, but for the petitions filed in the appellate courts.

## II. Jurisdiction

■ As an initial matter, appellee GAF asserts that this court lacks jurisdiction to hear this appeal. We disagree. It has long been established that a small class of orders that do not terminate the underlying litigation are appealable as collateral orders despite the finality requirement of 28 U.S.C. § 1291, which provides that "[t]he courts of appeals . . . shall have jurisdiction of appeals from all final decisions of the district courts . . . except where direct review may be had in the Supreme Court." See *Cohen v. Beneficial Industrial Loan Corp.,* 337 U.S. 541, 546–47, 69 S.Ct. 1221, 1225–26, 93 L.Ed. 1528 (1949). To be immediately appealable, an order must meet three criteria: "[T]he order must conclusively determine the disputed question, resolve an important issue completely separate from the merits of the action, and be effectively unreviewable on appeal from a final judgment." *Coopers & Lybrand v. Livesay,* 437 U.S. 463, 468, 98 S.Ct. 2454, 2458, 57 L.Ed.2d 351 (1978). In other contexts, this court has held attorneys' fee awards to be appealable collateral orders. As we stated in *Seigal v. Merrick,* 619 F.2d 160, 164 n. 7 (2d Cir.1980):

> An award of attorney's fees does not fall within the ambit of Rule 54(b) certification, which is directed toward determinations of the parties' claims. See *Swanson v. American Consumer Industries, Inc.,* 517 F.2d 555, 560–61 (7 Cir.1975). However, we have appellate jurisdiction under the collateral order doctrine. *Cohen v. Industrial Loan Corp.,* 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949); *Lowe v. Pate Stevedoring Co.,* 595 F.2d 256, 257 (5 Cir.1979). Indeed, an early case permitting appeal from an order awarding fees before conclusion of the underlying litigation was a precursor of the *Cohen* collateral order doctrine. See *Trustees v. Greenough,* 105 U.S. 527, 531, 26 L.Ed. 1157 (1882).

---

1. 28 U.S.C. § 1927 provides as follows:

    Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

The order of attorneys' fees in this case is clearly a conclusive determination. The award was based on unsuccessful appeals to this court and to the Supreme Court. Since those appeals have been rejected, there can be no new grounds for any modification of the award in the district court; appellant's lawyer has paid the $1,000 and can only look to appellate review for relief. Indeed, the district judge apparently recognized this when he declared that the award was final and appealable.[2] Thus, this case is quite unlike the situation in *Hastings v. Maine-Endwell Central School District*, 676 F.2d 893 (2d Cir.1982), in which an interim award of attorneys' fees was assessed against a party, and was found to be not immediately appealable in part because it was subject to adjustment by the district court in its final award.

It is also clear that the fee award is completely separate from the merits of the case. As the Supreme Court stated in *White v. New Hampshire Department of Employment Security*, 455 U.S. 445, 451, 102 S.Ct. 1162, 1166, 71 L.Ed.2d 325 (1982), "a request for attorney's fees under § 1988 raises legal issues collateral to the main cause of action...." The Court was speaking in the context of a post-judgment award of attorneys' fees to a prevailing party in a civil rights action, but it went on to add more generally that "fee questions are not inherently or necessarily subsumed by a decision on the merits." Id. n. 13; see *Goodman v. Heublein, Inc.*, 682 F.2d 44, 47–48 (2d Cir.1982) (fee questions separate from merits); *Hastings v. Maine-Endwell Central School District*, supra, 676 F.2d at 896 (same); cf. *Swanson v. American Consumer Industries*, 517 F.2d 555, 560 (7th Cir.1975) (award of attorneys' fees may be collateral and appealable before termination of the main case); *Cinerama, Inc. v. Sweet Music, S.A.*, 482 F.2d 66, 70 n. 2 (2d Cir.1973). The fee award here, which was for allegedly dilatory litigation tactics, has no connection with the merits of the underlying age discrimination suit.

Appellee GAF appears to concede that the order in this case satisfies the first two criteria of appealability set out above. GAF contends, however, that the award is effectively reviewable after final judgment and therefore not currently appealable. Quoting from *Eastern Maico Distributors, Inc. v. Maico-Fahrzeugfabrik*, 658 F.2d 944, 947 (3d Cir.1981), GAF contends that after final judgment "the parties to the order will still be before the court, and retain the same interest in challenging the order as they have today." *Eastern Maico* involved several fee awards pursuant to Fed.R.Civ.P. 37, including an award against an attorney pursuant to Rule 37(a)(4). The Third Circuit refused to permit an immediate appeal, on the theory that to do so would undermine the purpose of Rule 37, which is designed, among other things, to prevent delays in discovery. But the *Eastern Maico* court noted that penalizing an attorney for dilatory conduct may place him in a quandary, since a lawyer may be penalized for "filing a motion which the lawyer believes necessary to protect his client's interest." Id. at 949.

We think the sanctions in this case placed Cheng's lawyer in a similar quandary. He was penalized for filing a motion he believed to be in his client's interest, a belief quite understandably strengthened by this court's prior decision in this case reversing the refusal of the district court to disqualify the Epstein firm. If appellant's lawyer is forced to await final judgment before obtaining appellate review of an award that may be personally burdensome, his position may become even more difficult. If the fee issue is linked to settlement negotiations, appellant's lawyer may be placed in an ethi-

2. In an order filed December 1, 1982, the district court stated that the fee award "is final and certified for an interlocutory appeal." Appellee contends that this order did not satisfy the requirements for certification of an interlocutory order for immediate appeal, pursuant to 28 U.S.C. § 1292(b). We need not decide this question, however, since as appellee also notes, appellant did not apply to this court for permission to take an appeal within ten days of the district court's order, as required by § 1292(b). Thus, appellant must rely on 29 U.S.C. § 1291 as the jurisdictional basis for his appeal.

cal dilemma; his view of any settlement proposal would almost certainly be colored by its handling of the attorneys' fee issue.

Although 28 U.S.C. § 1927, like Rule 37, is intended to prevent unnecessary delay in litigation, see H.R.Conf.Rep. No. 1234, 96th Cong., 2d Sess. 8, *reprinted in* 1980 U.S. Code Cong. & Ad.News 2782, we think the problems posed by postponing review outweigh the possibility of delay raised by an immediate appeal. In this case, appellant's appeal of the fee award apparently has not delayed the underlying litigation; according to appellant, discovery has proceeded independently of the appeal. Moreover, we think the fee award in this case is distinguishable from the Rule 37 situation involved in *Eastern Maico.* The fee award here bears no relation to anything that occurred in the district court, since the sanction was imposed for appellant's efforts in appellate courts. The propriety of the award here will not be affected by subsequent developments in the case; it is thus unlike an award of fees for frivolous discovery motions, which "may not be completely separable from the merits of the underlying action." *Eastern Maico Distributors, Inc. v. Maico-Fahrzeugfabrik,* supra, 658 F.2d at 951. We note further that after the decision in *Eastern Maico,* the Ninth Circuit has held sanctions against an attorney under Rule 37(a)(4) immediately appealable. See *Reygo Pacific Corp. v. Johnston Pump Co.,* 680 F.2d 647 (9th Cir.1982). Since this issue is not before us, we express no opinion on the appealability of sanctions under that section against the attorney rather than the party he represents.

An additional reason for permitting an immediate appeal in this case is the possibility that appellant's lawyer, as a non-party, may never receive any appellate review of the fee award if he is denied that opportunity now. If the case is settled, or if appellant succeeds on the merits, it is not clear that appellant's lawyer will be able to appeal. As the Ninth Circuit noted with respect to an assessment of expenses and attorneys' fees against an officer of a corporate party under Rule 37(b)(2):

An order to pay attorney's fees and expenses under Rule 37(b)(2) is similar in both its purpose and effect to fines imposed for civil contempt which are made payable to an opponent to compensate the latter for loss sustained as a result of the contemnor's conduct. See Advisory Committee Note of 1970 to Amended Rule 37. As in the case of a civil contempt order, the non-party cannot argue the propriety of the Rule 37(b)(2) sanction for attorney's fees in an appeal from the final judgment as a party to the suit would be able to do. Unless he can obtain a review of the order and sanction at the time it is imposed, a non-party will have no right of review at all.

*David v. Hooker, Ltd.,* 560 F.2d 412, 417 (9th Cir.1977).

We recognize that in *Independent Investor Protective League v. Touche Ross & Co.,* 542 F.2d 156, 158 (2d Cir.1976), this court in dictum suggested that a non-party attorney may in some circumstances be "so allied with a party as to preclude interlocutory review of an order to pay compensatory expenses." But there is no indication in this case that Cheng and his attorney are in collusion to create delay or are in any other way so closely tied that Cheng's lawyer should not be considered a bona fide third party for purposes of this appeal. Accordingly, we find persuasive the Ninth Circuit's analogy to civil contempt proceedings against a non-party, which are generally immediately appealable. *IBM v. United States,* 493 F.2d 112, 115 n. 1 (2d Cir.1973), cert. denied, 416 U.S. 995, 94 S.Ct. 2409, 40 L.Ed.2d 774 (1974). We conclude that on the unusual facts of this case, the district court's order is appealable under the *Cohen* doctrine. See *Pomerantz v. Schandler,* 704 F.2d 681, 682 (2d Cir.1983).

### III. The Fee Award

■ The district court predicated its award of attorneys' fees on its finding that after the Supreme Court's decision in *Firestone,* supra, 449 U.S. 368, 101 S.Ct. 669, 66 L.Ed.2d 571 appellant's attorneys should have known the efforts to obtain a mandamus "were without hope and would have

the effect of unreasonably and vexatiously increasing costs to the defendant." The district court's decision seems to be based in part on a misunderstanding of the procedural history of the case. The opinion below refers to Cheng's attempt to overturn the district court's July 1981 denial of Cheng's renewed motion to disqualify as "in fact the second mandamus to the Court of Appeals on the same record." Thus, the district court was unable to "understand why plaintiff should expect that the Court of Appeals, having denied mandamus *on the way down* from the Supreme Court should reverse itself on the way up again" (emphasis in original). Apparently, the district court mistook appellant's earlier motion before us, which was to convert his prior appeal to this court to a mandamus petition, for an actual mandamus petition. In fact, the motion to convert was denied, and the prior appeal was not considered as a mandamus. Thus, we do not find it surprising that appellant should thereafter seek mandamus from this court, in light of the Supreme Court's suggestion in *Firestone* that mandamus may be appropriate under exceptional circumstances, 449 U.S. at 378 n. 13, 101 S.Ct. at 676 n. 13, and in light of this court's prior decision in appellant's favor.

Appellee GAF recognizes that under *Firestone* mandamus may be appropriate in rare cases to review an interlocutory order denying a motion to disqualify. Nonetheless, appellee argues that appellant's efforts to obtain a mandamus were frivolous because no new facts were presented, and because Cheng's mandamus petition "failed to allege any of the extraordinary circumstances which would authorize the issuance of the writ." In addition, appellee argues, Cheng failed to pursue any of the less drastic relief measures suggested in *Firestone* as alternatives to seeking an appeal, such as obtaining a protective order.

Appellant claims that new facts supported his renewed efforts to disqualify the Epstein firm. Appellant refers to the disqualification of the Epstein firm in a similar case, *Yaretsky v. Blum,* 525 F.Supp. 24, 27 (S.D.N.Y.1981), and the citation of this court's prior decision on the merits with approval in other cases, see, e.g., *Glueck v. Jonathan Logan, Inc.,* 653 F.2d 746, 750 (2d Cir.1981). These "new facts" may lend some support to appellant's decision to press ahead with his disqualification efforts.

But more important, we think this court's prior decision on the merits was itself enough to justify appellant's efforts. The Supreme Court vacated that decision on procedural grounds, but it did not address this court's treatment of the merits. Thus, although the district judge was not bound by our previous decision, we find it puzzling that he chose to ignore the reasoning of that decision and again denied appellant's motion to disqualify. More significantly, we find it extraordinary that he should penalize appellant's lawyer for attempting to have this court review that denial, given that this court had already ruled in appellant's favor in its earlier opinion. It might have been better if plaintiff had at least attempted to pursue one of the alternatives to mandamus listed in *Firestone,* supra, 449 U.S. at 378 n. 13, 101 S.Ct. at 676 n. 13; it might also have been better if plaintiff had detailed more clearly in his mandamus petition the circumstances he felt justified the extraordinary remedy of mandamus. Nonetheless, while the petition for mandamus was ultimately denied, it was hardly unreasonable for appellant's lawyer to bring it. Indeed, in light of our earlier decision on the merits in Cheng's favor, his attorney may have been ethically obliged to pursue his disqualification efforts.[3]

We are also surprised by the district judge's willingness to sanction appellant's attorney, not for a motion made in the district court, but *for appeals taken to this*

**3.** Since we think appellant's appeal did not unreasonably multiply the proceedings in this case, we need not decide whether a fee award under 28 U.S.C. § 1927 requires a finding of bad faith conduct, as appellant contends, or whether it merely requires a showing of unrea-

sonable conduct, as appellee argues. In addition, we need not resolve appellant's claim that the district court was required to hold a hearing before awarding attorneys' fees, since we have decided in appellant's favor on other grounds.

court and the Supreme Court. A rule permitting a district court to sanction an attorney for appealing an adverse ruling might deter even a courageous lawyer from seeking the reversal of a district court decision.

, We think such sanctions were particularly inappropriate in this case, in light of our prior opinion. Accordingly, after considering all of the arguments of the parties, we reverse the decision of the district judge awarding $1,000 in attorneys' fees, expenses and costs to appellee, and remand to the district court for further proceedings consistent with this opinion.[4]

GAF contends that appellant's appeal of the fee award was frivolous because it clearly lacked a jurisdictional basis, and because appellant did not act on the district court's 28 U.S.C. § 1292(b) certification. Thus, appellee seeks damages pursuant to Fed.R.App.P. 38, and 28 U.S.C. § 1927. As indicated above, however, this court has jurisdiction to consider the appeal. Since the appeal is successful, it was plainly not frivolous; appellee's request for damages is denied.

TIMBERS, Circuit Judge, dissenting:

The surest way to undermine the long standing final judgment rule—the cornerstone of federal appellate jurisdiction—is to sanction the corrosive erosion of particular exceptions. Here the majority, in its rush to reach the merits, has strained to create an exception which is not necessary and, in my view, is contrary to controlling law. I therefore respectfully dissent.

As the majority recognizes, there are three discrete requirements before the collateral order rule of *Cohen v. Beneficial Industrial Loan Corp.,* 337 U.S. 541, 546–47 (1949), may be invoked: (1) the order must conclusively determine the disputed question; (2) the order must resolve an important issue completely separate from the merits of the action; and (3) the order must be effectively unreviewable on appeal from a final judgment. *Coopers & Lybrand v. Livesay,* 437 U.S. 463, 468 (1978). *See Firestone Tire & Rubber Co. v. Risjord,* 449 U.S.

368, 375 (1981). Assuming arguendo that the first two requirements have been satisfied here, I am convinced that the third requirement has not been satisfied.

The Supreme Court through a number of decisions has clarified the circumstances under which appellate review of a collateral order is appropriate to ensure that a right will not "have been lost, probably irreparably". *Cohen, supra,* 337 U.S. at 546. For example, in *United States v. Ryan,* 402 U.S. 530 (1971), the Court held that a production order was not appealable where the respondent would have experienced a "substantial burden" in complying with a subpoena duces tecum. *Id.* at 532. Noting that the respondent had the option of resisting the production order (and thus exposing himself to contempt), the Court emphasized that the test of whether a collateral order is appealable is not measured in terms of the difficulties it imposes on a party; rather, the inquiry must focus on whether "denial of immediate review would render impossible *any review whatsoever* of an individual's claims. . . ." *Id.* at 533 (emphasis added). In *United States v. MacDonald,* 435 U.S. 850 (1978), the Court characterized the third requirement of *Cohen* as involving "an asserted right the legal and practical value of which would be destroyed if it were not vindicated before trial." *Id.* at 860 (footnote omitted). More recently, in *Firestone* the Court held that the "effectively unreviewable" requirement was not satisfied where the petitioner claimed that an order denying disqualification would be effectively unreviewable on final appeal because of "the possibility that the course of the proceedings may be indelibly stamped or shaped with the fruits of a breach of confidence or by acts or omissions prompted by a divided loyalty. . . ." *Firestone, supra,* 449 U.S. at 376. Observing that the petitioner had "fail[ed] to supply a single concrete example of the indelible stamp or taint of which it warns," *id.,* the Court concluded that "[o]ur cases . . . require much more before a ruling may be considered 'effectively unreviewable' absent immediate appeal." *Id.*

**4.** Appellant requests that the case be transferred to another district judge. We decline to transfer the case, however, as appellant has not specified an adequate basis for such a transfer.

In light of the Supreme Court's unmistakable message to the lower federal courts as to the meaning of the "effectively unreviewable" requirement, I think it is mandatory for us to determine whether appellant in the instant case has presented compelling evidence that postponing review of the § 1927 fee award until the entry of final judgment in the underlying employment discrimination action will either "render impossible any review whatsoever", *Ryan, supra,* 402 U.S. at 533, or destroy the "legal and practical value" of appellant's right to challenge the district court's order on appeal. *MacDonald, supra,* 435 U.S. at 860.

Appellant presents three arguments in support of his claim that the order will be effectively unreviewable unless interlocutory review is allowed. First, he suggests that appellee might contend at the close of the underlying action that "the appeal was taken too late." Second, he suggests that the award will not be appealable if appellant prevails at trial. Third, he suggests that the award will not be appealable if the parties settle.

Appellant's first argument may be disposed of quickly. Appellee has expressly stated that it would not object to an appeal from the order allowing attorneys' fees after final judgment has been entered. Such statement forecloses appellee from contending to the contrary.

Appellant's second suggested scenario— the situation that would be presented if appellant should prevail on the merits in the underlying action—gives rise to a more substantial argument. Although appellant has done no more than rhetorically inquire whether he will be able to appeal from the fee order in the event that he prevails on the merits, in fairness the implications of this "possibility" should be explored.

Even if appellant prevails in the underlying action, it is clear that an appeal from the order granting the § 1927 award will not be barred under the general rule that "the successful party below has no standing to appeal from the [district court's] decree...." *Public Service Commission v. Brashear Lines,* 306 U.S. 204, 206 (1939); 9 Moore's Federal Practice ¶ 203.06, at 3–23 (2 ed. 1983). This is so for several reasons. First, the fact that a fee award is independent of the merits of the case, *White v. New Hampshire Department of Employment Security,* 455 U.S. 445, 451 n. 13 (1982), indicates that, even if appellant prevails on the merits, he still may lose on a motion for attorneys' fees.[1] This would provide him with the opportunity to bring up for review the interim § 1927 fee award simultaneously with the appeal from the final order denying his fee application. Furthermore, Congress did not intend to place an attorney against whom sanctions have been imposed under § 1927 in jeopardy of forfeiting his right to appeal from an adverse § 1927 fee award. While § 1927 does not "distinguish between winners and losers, or between plaintiffs and defendants," *Roadway Express, Inc. v. Piper,* 447 U.S. 752, 762 (1980),[2] in its focus on deterring dilatory tactics, permitting an attorney to appeal from an adverse § 1927 order even though his client has prevailed in the underlying action is consistent with the intent of Congress that the sanctioned attorney be afforded "all appropriate protection

---

1. The underlying action is an employment discrimination one brought under the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 623 (1976 & Supp. II 1978). If appellant should prevail in the underlying action, he will be entitled to seek an award of reasonable attorneys' fees. *Syvock v. Milwaukee Boiler Mfg. Co.,* 665 F.2d 149, 162–65 (7 Cir.1981) (fees awarded in ADEA action pursuant to 42 U.S.C. § 1988 (1976)); *Frith v. Eastern Air Lines, Inc.,* 611 F.2d 950, 951 (4 Cir.1979). *But see Alford v. City of Lubbock, Texas,* 484 F.Supp. 1001, 1008 (N.D.Tex.1979), *modified,* 664 F.2d 1263 (5 Cir.), *cert. denied,* 456 U.S. 975 (1982).

2. In 1980 Congress amended 28 U.S.C. § 1927 (1976 & Supp. IV 1980) after the Supreme Court in *Roadway Express* held that, absent congressional action, the reference to "costs" in § 1927 could not be construed to include reasonable attorneys' fees. 447 U.S. at 757–63, 767. The 1980 amendment therefore added reasonable attorneys' fees to the list of sanctions that a judge may impose upon a dilatory attorney under § 1927. H.R.Conf.Rep. No. 1234, 96th Cong., 2d Sess. 8, *reprinted in* 1980 U.S.Code Cong. & Ad.News 2782–83.

of the due process available under the law". H.R.Conf.Rep. No. 1234, *supra* note 2, at 2783.[3]

Moreover, if an attorney were required to take an interlocutory appeal in order to preserve his right to appeal from an order awarding fees against him under § 1927 every time a court imposes a § 1927 sanction, it is apparent that the purpose of Congress in reducing litigation delays by amending § 1927 to include reasonable attorneys' fees would be undermined by the very statute which sought to reduce unwarranted delays.

Hence, although the possibility of appellant's prevailing on the merits may be of concern to his counsel that an appellate court might conclude that appellant or his counsel would be barred from pursuing an appeal merely because the client prevailed on the merits in the underlying action, this hardly rises to the level of rendering "impossible any review whatsoever," *Ryan, supra,* 402 U.S. at 533, or destroying the "legal and practical value" of counsel's right to challenge the fee order on appeal. *MacDonald, supra,* 435 U.S. at 860. On the contrary, the overriding policy of the Supreme Court in avoiding "piecemeal litigation", *Gillespie v. U.S. Steel Corp.,* 379 U.S. 148, 152–53 (1964), mandates waiting until entry of final judgment before appealing from the § 1927 fee award.

Finally, appellant suggests that the fee award may not be appealable in the event that the parties settle. The majority raises the spectre of an ethical dilemma for appellant's attorney. Speculating on the course of settlement negotiations, the majority conjectures that, if the fee issue is linked to settlement negotiations, appellant's attorney may be placed in an untenable ethical quandary. If speculate we must, the majority ignores an equally logical possibility, namely, that the parties might agree that the settlement does not determine the rights of either party with respect to an appeal from the § 1927 fee award. Indeed, appellee has suggested that appellant could

reserve the right to appeal from the fee award if a settlement is reached. In any event, discussion of possible scenarios with respect to potential settlement of the case is reminiscent of the reference to the possibility of indelibly tainting the trial proceeding that the Supreme Court in *Firestone* found insufficient to render a collateral order denying disqualification " 'effectively unreviewable' absent immediate appeal." 449 U.S. at 376.

I am mindful that in a pre-*Firestone* case we suggested that an interim fee award might be appealable under the *Cohen* doctrine. *Seigal v. Merrick,* 619 F.2d 160, 164 n. 7 (2 Cir.1980). *Seigal,* however, arose in an unusual procedural context where the district court had dismissed the underlying complaint prior to our ruling on the appeal from the fee award. *Id.* at 164. On the other hand, in circumstances more analogous to the instant case, we have held that an appeal from a pre-judgment fee award where counsel engaged in dilatory conduct is not appealable under the *Cohen* doctrine. *Alart Associates v. Aptaker,* 402 F.2d 779, 780–81 (2 Cir.1968); *see also Hastings v. Maine-Endwell Central School District,* 676 F.2d 893, 896 (2 Cir.1982) (interim fee determination does not satisfy finality and effectively unreviewable requirements). Moreover, while the distinguished author of our *Seigal* decision has pointed out the century-old precursor of the *Cohen* collateral order doctrine, *Trustees v. Greenough,* 105 U.S. 527, 531 (1882), recent Supreme Court developments suggest that we might be acting at our peril if we were to ignore the numerous Supreme Court decisions after *Cohen* referred to above. They clearly indicate that the effectively unreviewable requirement imposes a heavy burden on a party seeking review of an interlocutory collateral order. Clearly the Supreme Court, when using language such as rendering any review "impossible" or "destroying" a party's right to appeal, did not contemplate that a court of appeals would find the collateral order doctrine apposite when the

---

**3.** Although the House Conference Report speaks of "afford[ing] the attorney all appropriate protections of due process available under the law" *before* the sanction is imposed, H.R.Conf.Rep. No. 1234, *supra* note 2, at 2783, clearly Congress intended that an attorney be given an opportunity to challenge the propriety of a sanction imposed against him under § 1927.

prospect of a party losing his right to appeal from a collateral order after entry of final judgment is mere speculation—and especially when it is more probable that no injury will occur if an appeal is postponed until after entry of judgment in the underlying action. Appellant here has failed to establish that any irreparable harm will occur if the appeal from the § 1927 fee award is temporarily postponed.

Since appellant has failed to establish that the interim fee order is "effectively unreviewable", I would dismiss the appeal for lack of appellate jurisdiction. From the majority's refusal to do so, I respectfully dissent.[4]

---

4. Since in my view we have no appellate jurisdiction, it is neither necessary nor appropriate to reach the merits and I decline to do so.