Darwin Lee STARCHER and
Kathy Brown, Plaintiffs,

Teresa Cunningham, Attorney–Appellant,

v.

CORRECTIONAL MEDICAL SYSTEMS, INC.; Hamilton County, Ohio; Simon Leis, individually and in his capacity as Sheriff; Sally Remilard; and Joseph Spriggs, Defendants–Appellees.

No. 96–4250.

United States Court of Appeals,
Sixth Circuit.

Argued Dec. 5, 1997.

Decided May 21, 1998.

Teresa L. Cunningham (argued and briefed), Cincinnati, OH, pro se.

Brian E. Hurley (briefed), Crabbe, Brown, Jones, Potts & Schmidt, Cincinnati, OH, for Medical Corrections Systems, Inc., Sally Remilard and Joseph Spriggs.

Philip L. Zorn, Jr. (argued and briefed), Hamilton County Prosecutor's Office, Cincinnati, OH, for Hamilton County, Ohio and Simon Leis.

Before: BOGGS, MOORE, and FARRIS,[*] Circuit Judges.

BOGGS, J., delivered the opinion of the court, in which FARRIS, J., joined. MOORE, J. (pp. 426–28), delivered a separate dissenting opinion.

### OPINION

BOGGS, Circuit Judge.

Attorney Teresa Cunningham's appeal requires us to opine on an issue that has divid-

---

[*] The Honorable Jerome Farris, Circuit Judge of the United States Court of Appeals for the Ninth Circuit, sitting by designation.

ed our sister circuits: whether an attorney who eventually withdraws or is disqualified from a case may take an immediate, interlocutory appeal from an order in that case levying attorney's fees and costs against her for discovery violations. We believe the better view to be that an attorney in these circumstances may not take an immediate appeal, but rather must wait to file an appeal until final judgment is entered in the case. Because we lack jurisdiction to entertain this interlocutory appeal, we cannot disturb the order assessing attorney's fees and costs against Cunningham.

## I

On September 19, 1995, Cunningham (a sole practitioner) filed suit under 42 U.S.C. § 1983 against defendants Correctional Medical Systems, Inc. ("CMS"), two CMS employees, Hamilton County, Ohio, and the Hamilton County sheriff. The complaint Cunningham filed on behalf of plaintiff Darwin Lee Starcher alleged that the defendants negligently failed to supervise Starcher's son Casey, despite his known history of suicide attempts, and thus violated Casey's constitutional rights. Casey committed suicide while incarcerated in the Hamilton County jail.

In March 1996, the magistrate judge assigned to the case entered a scheduling order. The scheduling order required that the plaintiff designate experts by June 7, 1996, and that the defendants designate experts by July 19, 1996. It also set a discovery cut-off date of September 16, 1996, and a deadline of October 16, 1996, for filing dispositive motions. Cunningham's representation was fraught with difficulties even from the earliest days of this litigation. To begin with, it was apparent early in the case that Cunningham might be a material witness in the case because she spoke to a CMS official about Casey Starcher's psychiatric condition just a few days before Casey's suicide. For that reason, on four separate occasions the defendants moved to disqualify Cunningham as counsel. The magistrate judge denied the first three of these motions.

While she was opposing these motions to disqualify, Cunningham also managed to get into serious discovery trouble. The defen-

dants served Cunningham with interrogatories and document requests on May 29, 1996. Under Fed.R.Civ.P. 33 and 34, Cunningham had 30 days to respond to these discovery requests. On June 7, 1996, however, Cunningham informed defense counsel that she could not respond to the discovery requests because Darwin Lee Starcher, the administrator of Casey Starcher's estate, had died. Efforts to resolve the matter informally were rebuffed by Cunningham, as evidenced by an exchange of letters between Cunningham and defense counsel. Because the defendants were under a court order to disclose their experts and expert materials by July 19, 1996, the defendants moved on July 1, 1996, to compel production of the plaintiff's written discovery. Cunningham was served with this motion on July 1.

On July 10, 1996—at which point the plaintiff's discovery responses were already 10 days overdue—the magistrate judge held a discovery conference to consider various pending discovery disputes, including the delinquency of the plaintiff's written discovery. At this conference, the magistrate judge ordered the plaintiff "by 4:00 p.m. on July 12, 1996 to make full and complete responses to the First Set of Interrogatories and Document Requests To Plaintiff." Further, the magistrate judge ordered the depositions of two witnesses for the plaintiff (Rex Smith and Roxanne Dieffenbach) and two defendants (Remilard and Spriggs) to take place on July 25, 1996, with the proviso that the depositions of the defendants would go forward only if the plaintiff had complied with written discovery obligations by July 12, 1996.

As things turned out, the plaintiff—or, more to the point, Cunningham—did not comply with either of these orders. With respect to the order to serve interrogatory responses by July 12, Cunningham responded merely with blanket objections, with incomplete responses, or, in some cases, with no response at all. As for Cunningham's response to the defendants' document requests, defendants argue that Cunningham produced no documents at all, and the record does not reflect any written response to the document requests such as would be re-

quired under Fed.R.Civ.P. 34(b). With respect to the magistrate judge's order that depositions take place on July 25, to the defendants' great consternation Cunningham noticed the deposition of Rex Smith for July 22. The defendants immediately notified Cunningham that Smith could only be deposed on July 25, as ordered by the court.[1] Nonetheless, Cunningham refused to withdraw her deposition notice and the defendants resorted to filing a motion for protective order. Simultaneously, the defendants moved for an award of the attorney's fees they incurred in seeking court intervention to force Cunningham to comply with the earlier discovery order.

■■■ The magistrate judge scheduled a hearing for July 19, 1996. Cunningham attended this hearing, along with counsel for all defendants. At the hearing, Cunningham argued that she should be excused for failing to comply with her discovery obligations both because the defendants had served "contention" interrogatories,[2] the answers to which allegedly depended on documents to be produced by the defendants, and because her client had died and the new administrator of the Starcher estate was not returning her telephone calls. The only reason Cunningham gave for noticing a deposition on a date different from the date previously ordered was that defense counsel would not consent to a change in the time and location of the deposition. Significantly (as explained below), Cunningham did not ask for additional time to prepare a defense to the motion for fees and costs, nor did she object to the timing of the hearing.

After hearing from all counsel, the magistrate judge ruled for the defendants on all issues. In particular, he issued a new order requiring Cunningham to supplement her discovery responses with full and complete responses within 10 days, he granted the defendants' motion for a protective order

quashing the notice of depositions of the two defendants until Cunningham's discovery responses were received, and he granted defendants' motions for fees and costs, instructing defense counsel to file a bill of costs. The magistrate judge then received memoranda from the parties concerning the propriety of the fee award against Cunningham. In her memorandum, Cunningham argued (1) that the defendants' motions for fees and costs were received only shortly before the hearing before the magistrate judge, (2) that the magistrate judge's original July 10, 1996, order, requiring discovery responses by July 12th, gave her only two days within which to respond to discovery (despite the fact that she actually had the entire period from May 29th through July 12th to file responses), and (3) that the amount of requested attorney's fees was too high.

The magistrate judge rejected these arguments. He noted that the July 19th hearing had been scheduled on short notice "in view of the apparent urgency of these motions." He also stated that "[a]ll counsel were present and were given the opportunity to argue the various matters raised by the motions. A written transcript of the hearing has been prepared and filed in the record." The magistrate judge then stated that:

> The authority for the [fees and costs imposed] by the Court is found in Rule 26(c), F.R. Civ. P., and Rule 37(a)(4), F.R. Civ. P. The defendants' motion for protective orders were granted after a hearing was conducted; it was determined that the conduct of plaintiff's counsel had necessitated the motions; it is apparent from the motions and the record of the hearing that defendants [sic] counsel made a good faith effort to resolve the matters without court action, that plaintiff's non-disclosure and response was not substantially justified, nor was plaintiff's counsel's action in unilaterally rescheduling the Smith deposi-

1. Cunningham testified that the reason she did not contact defense counsel to work out a compromise was that she "knew from prior experience from working with them that it wouldn't do any good; it would be a waste of time."

2. "Contention" interrogatories are interrogatories that seek to clarify the basis for or scope of

an adversary's legal claims. The general view is that contention interrogatories are a perfectly permissible form of discovery, to which a response ordinarily would be required. *See, e.g., Taylor v. FDIC,* 132 F.3d 753, 762 (D.C.Cir. 1997); *Vidimos, Inc. v. Laser Lab Ltd.,* 99 F.3d 217, 222 (7th Cir.1996).

tion, and that other circumstances do not exist to make an award of expenses unjust.

With these findings in mind, the magistrate judge ordered Cunningham to pay $2928.00 in attorney's fees, copying costs, and postage to CMS, and $1690.50 in attorney's fees to the county defendants. The magistrate judge further noted that Cunningham "neither stated to the Court that she was not prepared to go forward with the hearing nor requested a continuance of the hearing. Her position on each of the motions was argued forcefully and clearly. This Court is not persuaded that she needed more time to prepare." In closing, the magistrate judge stated that "[t]he Court considers the conduct of plaintiff's counsel to be egregious." Over Cunningham's objections, the district court affirmed the magistrate judge's award of fees and costs. Simultaneously, the district court granted the defendant's motion to disqualify Cunningham as plaintiff's counsel. This appeal followed.

## II

### A

 The final judgment rule, reflected in 28 U.S.C. § 1291, has deep roots in American law. See Cobbledick v. United States, 309 U.S. 323, 326, 60 S.Ct. 540, 84 L.Ed. 783 (1940) (noting origin of final judgment rule in Judiciary Act of 1789). Both to ensure the integrity of the trial process and to improve the efficiency of the judicial system, the final judgment rule essentially provides that interlocutory orders entered by a trial court—such as discovery orders entered during pretrial proceedings, or evidentiary rulings made during trial—may not be reviewed by

an appellate court until the trial court enters a final judgment disposing of all claims at issue in the case.[3] More than 90 years ago, a unanimous Supreme Court held that an order compelling the production of discovery materials is a non-appealable interlocutory order. See Alexander v. United States, 201 U.S. 117, 26 S.Ct. 356, 50 L.Ed. 686 (1906). In Alexander, the Supreme Court recognized that "[i]n a certain sense finality can be asserted" as to such orders, but only in the same sense that "finality can be asserted of any order of a court." Id. at 121, 26 S.Ct. 356. The Court therefore laid down a general rule governing the appealability of discovery orders: an individual subject to a discovery order can either obey the order, or can refuse to comply and face punishment for contempt. Because a contempt judgment is personal to the individual resisting the discovery order, and is considered final as to that individual, an immediate appeal is available. See id. at 122, 26 S.Ct. 356. In Alexander, however, rather than openly resist a discovery order, the appellants simply appealed the order. The Supreme Court dismissed the appeal for want of jurisdiction because there was no final judgment as to the appellants. See ibid.

Alexander remains the general rule governing appeals from discovery orders.[4] However, the Supreme Court has carved out an exception for a "small class" of discovery and other interlocutory orders that "finally determine claims of right separable from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated." Cohen v.

---

**3.** The principal exceptions to the final judgment rule are, first, Fed.R.Civ.P. 54(b), which permits a trial court to direct the entry of a "final judgment" in a case even though that judgment will not dispose of all claims (or will dispose of all claims, but not as to all parties) in the case; second, 28 U.S.C. § 1292(b), which permits an appeal from an interlocutory order if the trial court certifies that the order raises a controlling question of law as to which there is substantial ground for difference of opinion, and if the appellate court exercises its discretion to hear the appeal; and third, the "collateral order" doctrine of Cohen v. Beneficial Industrial Loan Corp., 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528

(1949), which permits the interlocutory review of certain collateral orders that conclusively determine a disputed question, that resolve an important issue, and that would be effectively unreviewable on appeal from a final judgment.

**4.** The Supreme Court's adherence to the Alexander procedure for obtaining appellate review of discovery orders has been unswerving. See Church of Scientology of California v. United States, 506 U.S. 9, 18 n. 11, 113 S.Ct. 447, 121 L.Ed.2d 313 (1992); United States v. Ryan, 402 U.S. 530, 532–33, 91 S.Ct. 1580, 29 L.Ed.2d 85 (1971).

*Beneficial Industrial Loan Corp.*, 337 U.S. 541, 546, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949). Our task today is to decide whether an order requiring the plaintiff's attorney to pay to defense counsel the costs incurred as a result of moving to compel discovery qualifies as a member of the "small class" of immediately appealable collateral orders contemplated in *Cohen.*

█ In addressing this question, two prefatory comments are required. First, while we are sympathetic to the plight of Ms. Cunningham, who may, as a practical matter at this late date, have no avenue for appellate review other than this proceeding,[5] the mere fact that she may be unable to obtain appellate review does not enter into our jurisdictional analysis. As the unanimous Supreme Court has said, "the right to a judgment from more than one court is a matter of grace and not a necessary ingredient of justice. Congress from the very beginning has, by forbidding piecemeal disposition on appeal of what for practical purposes is a single controversy, set itself against enfeebling judicial administration." *Cobbledick,* 309 U.S. at 325, 60 S.Ct. 540. Second, our subjective assessment of the importance, if any, of the underlying issues raised by Cunningham's appeal also cannot enter into our analysis. The Supreme Court has declined to extend the collateral-order doctrine to cover appeals from judgments of even the most sweeping import. *See, e.g., Coopers & Lybrand v. Livesay,* 437 U.S. 463, 468–69, 98 S.Ct. 2454, 57 L.Ed.2d 351 (1978) (holding class-certification order not appealable under *Cohen* ); *cf. In re Rhone–Poulenc Rorer, Inc.,* 51 F.3d 1293, 1295 (7th Cir.1995) (recognizing broad significance of class-certification orders and noting that writ of mandamus was required to obtain appellate review of such an order).

**B**

█ The precise question presented today is whether Cunningham, an attorney repre-

senting the plaintiff who was disqualified as counsel during the course of the litigation below, has a right to an immediate appeal from an order imposing attorney's fees and costs on her because her opponents were forced to move for an order compelling her to comply with a previous discovery order. To qualify as an immediately appealable collateral order under *Cohen,* this order would have to conclusively determine the disputed question (here, Cunningham's liability for attorney's fees and costs), resolve an important issue completely separate from the merits of the action, and be effectively unreviewable on appeal. It is beyond dispute that the first *Cohen* factor is satisfied here; accordingly, we focus our attention on factors two and three.

The circuits have divided over the question of whether a discovery order directed at an attorney participating in the underlying lawsuit raise issues "completely separate from the merits of the action."[6] Five circuits have held that orders similar to the order at issue in this case (including orders imposing sanctions under Fed.R.Civ.P. 11, orders assessing attorney's fees under Fed.R.Civ.P. 37, and others) are so completely separate from the merits of the underlying action as to be immediately appealable by the attorney subject to the order. *See Transamerica Commercial Fin. Corp. v. Banton, Inc.,* 970 F.2d 810, 814 (11th Cir.1992); *Crookham v. Crookham,* 914 F.2d 1027, 1029 n. 4 (8th Cir.1990); *Aetna Life Ins. Co. v. Alla Med. Svcs., Inc.,* 855 F.2d 1470, 1472–73 (9th Cir. 1988); *Frazier v. Cast,* 771 F.2d 259, 262 (7th Cir.1985); *Cheng v. GAF Corp.,* 713 F.2d 886, 889 (2d Cir.1983). Five other circuits have come to the opposite conclusion. *See Sanders Assocs., Inc. v. Summagraphics Corp.,* 2 F.3d 394 (Fed.Cir.1993); *G.J.B. & Assocs. v. Singleton,* 913 F.2d 824, 829 (10th Cir.1990); *Click v. Abilene Nat'l Bank,* 822 F.2d 544, 545 (5th Cir.1987); *In re Licht & Semonoff,* 796 F.2d 564, 569–70 (1st Cir.

---

5. The underlying case has been dismissed by the district court since this appeal was filed, and Cunningham did not file a notice of appeal from the order dismissing the case.

6. We recognize, of course, that Cunningham was no longer participating in the case at the time

she filed this appeal; she had been disqualified as counsel on the same day the district court affirmed the magistrate judge's order imposing attorney's fees and costs against her. We discuss the question of whether this distinction matters in Section II.C, *infra.*

1986); *Eastern Maico Distribs. v. Maico–Fahrzeugfabrik, G.m.b.H.*, 658 F.2d 944, 947 (3d Cir.1981).

■ Because our circuit has not yet stepped into these cross-currents, we are especially mindful of *Cohen*'s dictum that practical considerations are paramount in deciding whether a particular kind of order qualifies for immediate appeal under the collateral order doctrine. *See Cohen*, 337 U.S. at 546, 69 S.Ct. 1221. In this regard, it is telling that even some of those circuits that initially embraced the idea that an attorney could immediately appeal an order imposing discovery sanctions have since recognized its significant potential for disruption of the trial process. The Second Circuit, for example, recently noted that its precedent permitting attorneys immediately to appeal sanctions orders led to a "flurry of arguments, charges and countercharges, motions and cross-motions and other papers in the district court" that "effectively diverted for far too long the attention of the parties and the district court from the merits of the underlying ... litigation." *Ted Lapidus, S.A. v. Vann*, 112 F.3d 91, 96 (2d Cir.1997). In light of the practical effects of its precedent, the court went so far as to say that "[w]ere we writing on a clean slate, we would be tempted to confine *Cheng* to its unusual facts and characterize the sanctions order here as nonappealable under the *Cohen* doctrine." *Ibid.* Similarly, the Seventh Circuit recently acknowledged that its precedents permitting immediate appeals by sanctioned attorneys "ha[ve] not played to universal acclaim," and noted that extension of these precedents "would produce a substantial, and unjustified, erosion of the final-decision requirement." *Cleveland Hair Clinic, Inc. v. Puig*, 104 F.3d 123, 125 (7th Cir.1997).

In short, several circuits have experimented with the "immediate appeal" rule urged by Cunningham, and the experience has not been positive. We therefore are not persuaded that the issues presented by an appeal such as Cunningham's reliably could be

deemed completely separate from the merits of the underlying case. It is conceivable, of course, that in an extreme case where an attorney provides absolutely no response to discovery, the issue of the attorney's compliance with a discovery order would not implicate any merits issues. But here, Cunningham provided responses to at least some of the defendants' discovery requests, and presumably her challenge to the district court's Rule 37 order would be that her responses were sufficient at the time they were provided. To resolve such a debate, we would be required to consider, among other things, the available evidentiary support for each of many specific contentions questioned by the defendants. This process would differ only slightly from an inquiry into the merits. We therefore conclude that the issues involved in Cunningham's appeal likely would not turn out to be "completely separate" from the merits of the underlying case.

## C

Our dissenting colleague argues that the crucial fact entitling Cunningham to an immediate appeal is that she was disqualified as counsel in the underlying case and that, therefore, her appeal is lexically "separate" from the issues involved in the underlying case. *See infra* at 427–28. On this issue too, the circuits are split. Of the five circuits (First, Third, Fifth, Tenth, and Federal) that refuse to permit a participating attorney to file an immediate appeal under the collateral order doctrine, two have held nevertheless that an attorney who has withdrawn from representation in the underlying case is entitled to an immediate appeal. *See Walker v. City of Mesquite*, 129 F.3d 831, 832 (5th Cir.1997); *Eavenson, Auchmuty & Greenwald v. Holtzman*, 775 F.2d 535, 539 (3d Cir.1985). By contrast, one of these circuits has specifically reached the opposite conclusion. *See Howard v. Mail–Well Envelope Co.*, 90 F.3d 433, 436 (10th Cir.), *cert. denied*, —— U.S. ——, 117 S.Ct. 484, 136 L.Ed.2d 378 (1996).[7]

While the law firm in that case was never involved in a representative capacity in the underlying case (it was instead the target of a civil subpoena), the fact that the firm was not deemed

---

**7.** In addition, the D.C. Circuit recently held that a non-participating law firm was not entitled to an immediate appeal of a discovery order. *See In re Sealed Case*, 141 F.3d 337 (D.C.Cir.1998).

We believe the better view is that a non-participating attorney, like a participating attorney, ordinarily must wait until final disposition of the underlying case before filing an appeal. For one thing, it would be strange if the fact of disqualification permitted an attorney to take an immediate appeal of a discovery order, but did not permit an immediate appeal of the disqualification order itself. *See Richardson–Merrell, Inc. v. Koller,* 472 U.S. 424, 431, 105 S.Ct. 2757, 86 L.Ed.2d 340 (1985) (order disqualifying counsel in civil case not immediately appealable under collateral order doctrine). Moreover, from a practical perspective, there are serious administrative problems with a rule that hinges on whether the attorney subject to the discovery order is a participating or non-participating attorney. Here, by sheer fortuity, it happens that the order affirming the magistrate judge's order that Cunningham pay attorney's fees was issued on the same day as the order disqualifying Cunningham from the case. We can easily conceive of cases where this does not happen—where, for example, an attorney is ordered pursuant to Rule 37 to pay attorney's fees associated with a discovery dispute, and then does not withdraw or become disqualified as counsel for months or years afterward. In such a case, when would the 30–day filing period of Fed. R.App. P. 4 begin to run—from the date of the Rule 37 order, or from the date of withdrawal? Either outcome strikes us as fraught with difficulty.

Expanding the collateral order doctrine to cover cases like Cunningham's seems particularly unwise at a time when requests for sanctions are increasingly used more for tactical purposes than to seek redress for true discovery abuses. Creating a distinction between participating and nonparticipating attorneys could add another tactical arrow to the arsenal; litigants confronted with especially skilled or tenacious counsel could move for sanctions in a calculated attempt to force the attorney to withdraw from the case. For all these reasons, we decline to adopt a distinction between participating and non-participating attorneys for purposes of the collateral order doctrine.

### D

Because Cunningham's appeal does not satisfy the second element of the *Cohen* test, we need not address the third element— whether the order would be effectively unreviewable absent an interlocutory appeal—in any great detail. As on the other dimensions of this case, the circuits are divided fairly evenly between those that believe a sanctioned attorney satisfies the third *Cohen* factor and those that do not. This circuit split is somewhat puzzling in light of the Supreme Court's recognition that orders awarding attorney fees are appealable independent of the disposition of the merits of the underlying case. *See Budinich v. Becton Dickinson & Co.,* 486 U.S. 196, 199–200, 108 S.Ct. 1717, 100 L.Ed.2d 178 (1988). We see no reason why, after final resolution of the underlying case (whether the resolution be a judgment for plaintiff, a judgment for defendant, or an out-of-court settlement), a sanctioned attorney should be unable to appeal the order imposing sanctions. Of course, if the person involved is a non-participating attorney, this may require her to monitor the progress of the litigation with some care. This fact does not change our analysis of the third *Cohen* factor, however; it is important not to "improperly blur the line between the impossibility of effective review necessary under the *Cohen* doctrine and [the] mere inconvenience of monitoring the former client's case and performing the other tasks necessary to perfect an appeal." *Howard,* 90 F.3d at 437.

### III

For the foregoing reasons, we conclude that we have no jurisdiction over Cunningham's appeal. Therefore, the appeal is DISMISSED.

---

entitled to an immediate appeal provides strong further support for the proposition that the attorney's involvement or lack of involvement in the underlying case cannot be dispositive in determining whether the attorney is entitled to an immediate appeal. Surely if an attorney who was *never* involved in a case is not sufficiently "separate" from the case to warrant immediate appellate review, an attorney (like Cunningham) who was involved but subsequently is disqualified cannot be entitled to an immediate appeal.

MOORE, Circuit Judge, dissenting.

I write separately to highlight the unnecessarily broad brush the majority uses to paint on this otherwise narrow canvass. Specifically, I harbor grave concerns regarding three facets of the majority opinion. First, the majority holds that sanctions orders, such as the one appealed from in this case, fail to satisfy the second *Cohen* element requiring that the merits of the underlying litigation be separate from the sanctions order.[1] *See* Op. at 422–24. Second, the majority rejects any distinction between those attorneys who are and those who are not participating in the underlying litigation, despite the weight of authority accepting this distinction. Finally, the majority ignores the inequity of applying its new rule, retroactively, to bar a merits review of the issues raised by Cunningham in this appeal. *See* Op. at 423, n. 5.

In my view, Cunningham's appeal satisfies the second *Cohen* requirement in that the sanctions order is separate from the merits of the underlying action. Although in some instances sanctions orders may be intertwined with the merits, none of these circumstances are present in this case. For example, in *G.J.B. & Assocs. v. Singleton,* 913 F.2d 824, 829 (10th Cir.1990), the plaintiff's lawyer failed to turn over notes requested by the defendant's lawyer and then used those notes at trial. The district court sanctioned the plaintiff's lawyer for failing to produce the notes to defendant's counsel. On appeal, the Tenth Circuit held that the sanctions arose from a discovery dispute over the relevance of the notes. Accordingly, any evaluation of relevancy would necessarily require the court to examine the merits of the underlying action. The court thus concluded that the attorney's appeal failed to satisfy the *Cohen* requirements and should await a final judgment in the case. *Accord Eastern Maico Distribs. v. Maico–Fahrzeugfabrik, G.m.b.H.,* 658 F.2d 944, 947 (3d Cir.1981) (dismissing appeal for failure to satisfy *Cohen* requirements where review of sanctioning of attorney for filing dilatory discovery

motions required examination of relevance to underlying dispute). *Cf. Evanson v. Union Oil Co. of California,* 619 F.2d 72 (Temp.Emer.Ct.App.), *cert. denied,* 449 U.S. 832, 101 S.Ct. 102, 66 L.Ed.2d 38 (1980) (sanctioned party requested appellate court to vacate district court's sanction order for lying in interrogatory answers, and court of appeals refused where determining truth or falsity of answers would require it to evaluate the merits of the underlying action).

Contrast the holdings in the preceding cases with the holding in *Thomas E. Hoar, Inc. v. Sara Lee Corp.,* 882 F.2d 682 (2d Cir.1989). In that case, the magistrate judge imposed monetary sanctions on an attorney under Rule 37 for failure to provide complete answers to interrogatories and for failure to produce requested documents, and the district court affirmed the sanctions order. On appeal, the Second Circuit concluded that the appeal satisfied the second *Cohen* requirement "since the imposition of the sanction involves an issue completely separate from the merits of the underlying litigation." *Id.* at 685 (quotation omitted).

The facts presented in Cunningham's appeal more closely resemble the facts in *Thomas E. Hoar, Inc.* than those facts presented in *G.J.B. & Assocs., Eastern Maico Distribs.,* and *Evanson.* Specifically, unlike the appellants in those cases, Cunningham does not contend that her failure to answer the discovery turned on the relevance or scope of the discovery, or that her answers were true where the district court found them to be false. Those kinds of contentions could have required this court to evaluate the merits of the underlying action to determine if the interrogatories were relevant, covered an appropriate time frame, or whether Cunningham's responses were in fact true. As the courts in *G.J.B. & Assocs., Eastern Maico Distribs.,* and *Evanson* correctly concluded, any such evaluation of the merits would by its very nature run afoul of *Cohen*'s requirement that the sanctions order and the merits be "completely separate."

---

**1.** In dictum, the majority notes that maybe in an "extreme case" the sanctions order "would not implicate any merits issues." Op. at 424.

Cunningham raises far different challenges to the sanctions order. Her arguments against the sanctions order are that she did not have enough time to answer the interrogatories, she had to depose Smith in Indianapolis, and she did not receive sufficient notice in order to prepare for the sanctions hearing. None of these arguments against the sanctions order involve the substance of the discovery itself. Consequently, like the appellant's due process objection in *Thomas E. Hoar, Inc.*, resolution of Cunningham's timing and due process objections to the sanctions order would not compel us to address the merits of the underlying action. Therefore, Cunningham's appeal satisfies the second *Cohen* requirement. In my view, the majority opinion needlessly forecloses the possibility that some sanctions orders, not just those in an "extreme case," will not be intertwined with the merits and thus will satisfy the second *Cohen* requirement.

Next, the majority rejects the participating and nonparticipating attorney distinction. However, of the five circuits to consider this issue explicitly, four have found this distinction persuasive. *Compare Walker v. City of Mesquite, Tex.*, 129 F.3d 831, 832 (5th Cir. 1997) ("As a general rule an attorney must await the end of litigation in the district court to appeal a sanction.... [H]owever, we recognize[ ] an exception to this rule in those situations in which the sanctioned attorney is no longer involved in the case and an appeal of the sanctions order would not impede the underlying litigation."); *Eavenson, Auchmuty & Greenwald v. Holtzman*, 775 F.2d 535, 539 (3d Cir.1985) (holding that a sanctioned attorney who has withdrawn from the representation may take an interlocutory appeal under *Cohen* ); *Mark Indus., Ltd. v. Sea Captain's Choice, Inc.*, 50 F.3d 730, 731 (9th Cir.1995) (sanctioned counsel who has withdrawn from the representation may take an interlocutory appeal under *Cohen* ); *Knorr Brake Corp. v. Harbil, Inc.*, 738 F.2d 223, 226 (7th Cir.1984) (same), *with Howard v. Mail-Well Envelope Co.*, 90 F.3d 433, 436 (10th Cir.1996) (rejecting interlocutory appeal of sanctions order by withdrawn attorney).

With respect to *In re Sealed Case*, 141 F.3d 337 (D.C.Cir.1998), cited by the majority in a footnote, that case did not address the issue of whether a sanctioned attorney who has withdrawn or been disqualified from representing a party to the underlying action may immediately appeal the sanctions order. Instead, that case addressed the issue of whether a law firm subjected to a subpoena duces tecum relating to a case in another district court in which it was not a party could immediately appeal an order of a federal district court transferring the case to that other federal district court. The D.C. Circuit held the law firm could not immediately appeal such an order, but must either disobey the order, be cited for contempt, and then appeal the contempt order, or must file a petition for a writ of mandamus. *See id.* at 339–40. In that case, the law firm proceeded by way of a mandamus petition. Accordingly, the *Sealed* case, which focuses on a peripheral issue, provides little support for the Tenth Circuit's position in *Howard* denying an immediate appeal of the sanctions order to a sanctioned attorney who no longer represents a party in the underlying action, a position that is contrary to the weight of published authority.

The Tenth Circuit bases its restrictive position on the ground that a sanctioned attorney no longer connected to the underlying action may appeal at the conclusion of that action, whether the court issues a final judgment, or the parties settle the case. Thus, the Tenth Circuit holds the sanctioned attorney fails to meet the third *Cohen* requirement of demonstrating that the sanctions order will be effectively unreviewable on appeal from a final judgment. *See Howard*, 90 F.3d at 436–37. This is a debatable issue, as manifested by the even split among our sister circuits when the sanctioned attorney remains as an attorney in the underlying litigation. The Second, Seventh, Eighth, Ninth, and Eleventh Circuits hold that a sanctioned attorney meets this third requirement. *See, e.g., Ted Lapidus, S.A. v. Vann*, 112 F.3d 91, 95–96 (2d Cir.), *cert. denied,* — U.S. —, 118 S.Ct. 337, 139 L.Ed.2d 262 (1997); *Serritella v. Markum*, 119 F.3d 506, 512 (7th Cir.), *cert. denied sub nom. Steagall v. United States Dist. Court for Cent. Dist. of Ill.,* — U.S. —, 118 S.Ct. 566, 139 L.Ed.2d 406 (1997); *Crookham v. Crookham*, 914 F.2d

1027, 1029 n. 4 (8th Cir.1990); *Triad Sys. Corp. v. Southeastern Express Co.,* 64 F.3d 1330, 1338 (9th Cir.1995); *Transamerica Commercial Fin. Corp. v. Banton, Inc.,* 970 F.2d 810, 814 (11th Cir.1992). Conversely, the First, Third, Fifth, Tenth, and Federal Circuits hold that a sanctioned attorney who remains as counsel in the litigation fails the third *Cohen* requirement. *See, e.g., In re Licht & Semonoff,* 796 F.2d 564, 572 (1st Cir.1986); *Eastern Maico Distribs. v. Maico–Fahrzeugfabrik, G.m.b.H.,* 658 F.2d 944, 947 (3d Cir.1981); *Click v. Abilene Nat'l Bank,* 822 F.2d 544, 545 (5th Cir.1987); *G.J.B. & Assocs. v. Singleton,* 913 F.2d 824, 829 (10th Cir.1990); *Sanders Assocs. v. Summagraphics Corp.,* 2 F.3d 394, 398 (Fed.Cir. 1993).

Today, the majority rejects the weight of authority, holding that a nonparticipating attorney, such as Cunningham, cannot take an interlocutory appeal of a sanctions order. Adopting the reasoning in *Howard,* the majority holds that in this circuit, a sanctioned attorney, whether participating or nonparticipating in the underlying action, must wait until the termination of that litigation to take an appeal of the sanctions order. In holding that adequate and effective appellate review is available at the conclusion of the case, the majority renders it impossible for nonparticipating sanctioned attorneys to satisfy the third *Cohen* requirement. Although I remain unpersuaded by the majority's view that nonparticipating attorneys must await the conclusion of the underlying action in order to appeal the sanctions order, I am bound by this new holding that review is both available and effective when delayed until the conclusion of a case in which the attorney no longer has a role.

Having announced a new rule in this circuit, the majority suggests that its holding applies retroactively so as to bar a merits review of the issues Cunningham raises in this appeal. *See* Op. at 423 & n. 5. Because Cunningham did not file a notice of appeal upon the termination of the underlying litigation, retroactive application of the majority decision effectively bars *any* review of the district court's sanctions imposed upon her. The inequity of this result is patently obvi-

ous. When faced with a similar situation, the Tenth Circuit in *G.J.B. & Assocs. v. Singleton,* 913 F.2d 824 (10th Cir.1990), refused to impose such an unfair result on the attorney, explaining that

> [t]he sharp split between the circuit courts as to the *Cohen* doctrine's applicability and the absence of any binding circuit precedent made our holding difficult, if not impossible, to foretell. Consequently, to apply our holding retroactively would be inequitable.... If we dismiss [the attorney's] appeal for want of jurisdiction, he will be remediless for the time has passed to file a new notice of appeal from the final judgment. While the aim of our holding—to effectuate the purposes of the final judgment rule—would not be hampered by its retroactive application, the small benefit we would gain by applying our holding retroactively does not outweigh the inequity which would result from such a determination. Accordingly, we conclude that our holding should not apply retroactively....

*Id.* at 829–30. As in *G.J.B.,* principles of equity militate here against retroactive application of the majority's new rule and compel this court to conduct a merits review of the issues Cunningham raises in this appeal.

For the foregoing reasons, I respectfully dissent.