RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 16a0175p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————

RUDD EQUIPMENT COMPANY, INC.,

> *Plaintiff-Appellant,*

*v.*

JOHN DEERE CONSTRUCTION & FORESTRY COMPANY,

> *Defendant-Appellee.*

No. 16-5055

———————

Appeal from the United States District Court
for the Western District of Kentucky at Louisville.
No. 3:14-cv-00703—David J. Hale, District Judge.

Decided and Filed: July 27, 2016

Before: COLE, Chief Judge; BATCHELDER and COOK, Circuit Judges.

———————

### COUNSEL

**ON BRIEF:** Brent R. Baughman, John K. Bush, Janet P. Jakubowicz, BINGHAM GREENEBAUM DOLL LLP, Louisville, Kentucky, for Appellant. Cory M. Curtis, BAKER & HOSTETLER LLP, Houston, Texas, M. Scott McIntyre, BAKER & HOSTETLER LLP, Cincinnati, Ohio, Justin T. Winquist, BAKER & HOSTETLER LLP, Denver, Colorado, for Appellee.

———————

### OPINION

———————

COLE, Chief Judge. Rudd Equipment Company, Inc., appeals the order of the district court granting John Deere Construction & Forestry Company's motion to unseal this case. Immediately upon initiating this action, Rudd filed a motion to seal all filings, and indeed the very existence of this case, from public view. Although the district court entered an order

1

sealing the case, it later granted Deere's request to unseal. Because Rudd cannot show any countervailing privacy interest sufficient to outweigh the strong presumption in favor of public access to federal court records, we affirm.

I.

Rudd is a long-time authorized dealer of equipment manufactured by Hitachi Construction Equipment. In 2002, Deere became the exclusive North American wholesale supplier of Hitachi products and entered into renewed dealer agreements to continue supplying equipment to Rudd. By October 2014, however, the relationship had soured, and Deere notified Rudd of its intent to terminate those dealer agreements. At the same time, Deere initiated arbitration proceedings, as required by the agreements' mandatory arbitration provisions, seeking a declaration of its right to terminate its agreements with Rudd.

Rudd opposes Deere's claimed right of termination, and notes that sales and service of Hitachi equipment pursuant to the agreements is a significant portion of its business. Although Rudd agrees that arbitration is the proper forum for this dispute, it nevertheless filed this action seeking injunctive relief to maintain the status quo of the agreements pending final resolution by the arbitration panel.

Contemporaneously with its complaint, Rudd filed a motion to seal the case. According to Rudd, secrecy in this matter is paramount: were any word of Deere's contemplated termination of Rudd's Hitachi business—including "the very fact of this lawsuit"—to leak, Rudd maintains that its business would suffer "devastating consequences," likely resulting in the "loss of Rudd's existing and future customers, the layoff (or preemptive departure) of many skilled and trained Rudd employees, significant diminution of the value of Rudd's enormous financial investment in facilities, tools, and inventory . . . [and] loss of good will and harm to Rudd."

Rudd submitted with its motion to seal a one-page proposed order. Two weeks after the complaint was filed, on November 5, 2014, the district court entered the order, before Deere submitted a response. On December 5, during an on-the-record telephonic status conference, the court asked the parties whether the case should remain under seal; Rudd's counsel replied that it should, while Deere's counsel was silent. Over the next several months, both parties filed briefs

under seal. In February 2015, the parties met before a magistrate judge for a hearing on Rudd's request for injunctive relief. At the magistrate judge's suggestion, the hearing was converted into a mediation, the result of which was an "Agreed Order" settling the motion and addressing issues of interim relief during the pendency of the arbitration. The Agreed Order was entered by the court in March 2015, also under seal.

A panel convened to arbitrate the dispute learned of the Agreed Order and requested a copy, on the notion that the order providing for interim relief established the basis for the arbitration panel to wait until February 2016 for its hearing, rather than holding the hearing on a more expedited basis.[1] Deere's counsel forwarded the Agreed Order to the panel members without consulting Rudd, which prompted Rudd to attempt to retrieve the disclosed document and to file a motion for contempt against Deere. In response, Deere moved to vacate the court's sealing order, arguing that the court failed to state findings that would justify sealing the case and that Rudd failed to overcome the presumptive right of public access to court records.

In July 2015, the magistrate judge recommended that Rudd's contempt motion be denied, and that Deere's motion to unseal be granted. The magistrate judge concluded that the order sealing all filings made no factual findings or legal conclusions that would justify nondisclosure, that the relevant factors in this court's balancing test weighed strongly in favor of unsealing the case, and that Deere could not be found to have "waived" the public's right of access. The magistrate judge also reasoned that Rudd's claimed reliance on the seal was insufficient to justify a continued improper seal. The magistrate judge read our opinion in *In re Knoxville News-Sentinel Co., Inc.*, 723 F.2d 470, 478 (6th Cir. 1983), as commanding the court merely to "take account" of a party's reliance on a sealing order when conducting the usual balancing test, and not, as Rudd preferred, a wholesale repudiation of the balancing test in cases of reliance. The district court, emphasizing the court's independent duty to "consider the public interest without relying on either of the parties to represent that interest," agreed, and adopted the magistrate judge's report and recommendation in full. Rudd does not appeal the district court's denial of its contempt motion, but does appeal the portion of the district court's order unsealing the case.

---

[1]Although this lawsuit was intended by Rudd only to provide "interim" relief and "maintain the status quo" until the arbitration panel could render a decision, that arbitration process has itself been stayed pending the resolution of this appeal.

II.

We begin with our jurisdiction to hear this appeal. Rudd asserts, and Deere does not dispute, that we have jurisdiction under the collateral order doctrine. *See Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546–47 (1949). In Rudd's view, the district court's order conclusively determines a disputed question, which resolves an important issue completely separate from the merits of the action, and which would be effectively unreviewable on appeal from a final judgment. *See Starcher v. Corr. Med. Sys., Inc.*, 144 F.3d 418, 422 (6th Cir. 1998); *see also In re Sealed Case (Medical Records)*, 381 F.3d 1205, 1209 (D.C. Cir. 2004). We agree.

As we have previously suggested, orders sealing a court's records and denying public access to court documents can satisfy the collateral order doctrine. *See Application of Nat'l Broad. Co., Inc.*, 828 F.2d 340, 343 (6th Cir. 1987). The same goes for unsealing: This order "conclusively and finally determine[s] that the documents [will] not [be] protected from disclosure." *Sealed Case*, 381 F.3d at 1209 (internal quotation marks omitted). Moreover, it would be effectively unreviewable absent this appeal, since the ultimate merits of this case will be decided by an arbitration panel, by which time this case's docket will have been unsealed and open to the public for some time. *See In re Copley Press, Inc.*, 518 F.3d 1022, 1025 (9th Cir. 2008) ("Secrecy is a one-way street: Once information is published, it cannot be made secret again. An order to unseal thus conclusively determines that the information will be public. For the same reason, such an order is effectively unreviewable on appeal from a final judgment." (internal quotations, alterations, and citations omitted)); *Providence Journal Co. v. FBI*, 595 F.2d 889, 890 (1st Cir. 1979) ("Once the documents are surrendered pursuant to the lower court's order, confidentiality will be lost for all time. The status quo could never be restored.").

We also conclude this is an issue "completely separate" from the merits of the underlying dispute between Rudd and Deere. Although disclosure of the documents would, it seems, affect Rudd's bargaining power in its negotiations, sealing the court's docket would not "implicate any merits issue" related to Deere's substantive right to terminate the agreements. *Cf. Starcher*, 144 F.3d at 424; *see also Copley Press*, 518 F.3d at 1025. Accordingly, we have jurisdiction to hear this appeal.

III.

We review decisions of the district court to seal court documents or records, as well as orders lifting or modifying a seal, for abuse of discretion. *Meyer Goldberg, Inc. v. Fisher Foods, Inc.*, 823 F.2d 159, 161 (6th Cir. 1987). But a court's discretion to seal its records is bounded by a "long-established legal tradition" of the "presumptive right of the public to inspect and copy judicial documents and files." *Knoxville News-Sentinel*, 723 F.2d at 474. "In light of the important rights involved," we have held that "the district court's decision is not accorded the traditional scope of 'narrow review reserved for discretionary decisions based on first-hand observations.'" *Id.* at 476 (quoting *United States v. Criden*, 648 F.2d 814, 818 (3d Cir. 1981)). Instead, "[o]nly the most compelling reasons can justify non-disclosure of judicial records." *Id.* (citations omitted).

A.

We have long recognized a "strong presumption in favor of openness" regarding court records. *See Brown & Williamson Tobacco Corp. v. FTC*, 710 F.2d 1165, 1179 (6th Cir. 1983). In civil cases, as much as in criminal matters, "[t]he resolution of private disputes frequently involves issues and remedies affecting third parties or the general public," and secrecy serves only to "insulate[] the participants, mask[] impropriety, obscur[e] incompetence, and conceal[] corruption." *Id.*

Exceptions to this practice fall into two broad categories, the latter of which is relevant here: "[T]hose based on the need to keep order and dignity in the courtroom and those which center on the content of the information to be disclosed to the public." *Id.* In determining the appropriateness of sealing court records under this exception, we consider, among other things, the competing interests of the defendant's right to a fair trial, the privacy rights of participants or third parties, trade secrets, and national security. *See Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598 (1978); *Brown & Williamson*, 710 F.2d at 1179.

We recently clarified the "stark difference" between court orders entered to preserve the secrecy of proprietary information while the parties trade discovery, and the sealing of the court's docket and filings: "The line between these two stages . . . is crossed when the parties

place material in the court record," and in this latter stage, "'very different considerations apply.'" *Shane Grp., Inc. v. Blue Cross Blue Shield of Mich.*, No. 15-1544, 2016 WL 3163073, at \*3 (6th Cir. June 7, 2016) (quoting *Joy v. North*, 692 F.2d 880, 893 (2d Cir. 1982)). The public's focus is not only on the litigation's result, but "also on the conduct giving rise to the case," and in both circumstances, "the public is entitled to assess for itself the merits of judicial decisions." *Id.* Shielding material in court records, then, should be done only if there is a "compelling reason why certain documents or portions thereof should be sealed." *Id.* Even in such cases, "the seal itself must be narrowly tailored to serve that reason," and should "'analyze in detail, document by document, the propriety of secrecy, providing reasons and legal citations.'" *Id.* (quoting *Baxter Int'l, Inc. v. Abbott Labs.*, 297 F.3d 544, 548 (7th Cir. 2002)).

B.

Applying these principles, the capacious sealing order in this case cannot stand. The district court was therefore justified in revising its order and lifting the seal.

To begin with, the district court erred in failing to make any findings or legal conclusions in support of the initial seal. When a district court opts to seal court records, it must set forth specific findings and conclusions "which justify nondisclosure to the public." *Brown & Williamson*, 710 F.2d at 1176. "[A] court's failure to set forth those reasons—as to why the interests in support of nondisclosure are compelling, why the interests supporting access are less so, and why the seal itself is no broader than necessary," is itself sufficient ground to vacate the seal. *Shane Grp.*, 2016 WL 3163073, at \*4; *see also Goodman v. Fuller*, 960 F.2d 149 (6th Cir. 1992) (unpublished table decision) ("Where there is a challenge to the propriety of such a seal, however, and the district court, after weighing the conflicting interests, remains of the view that curtailment of the public's right of access to the records of its court system is justified, it is essential for the court to present a reasoned analysis explaining why.").

The district court therefore did not abuse its discretion in vacating the sealing order. First, the court was fully within its authority to revisit its prior order. *Mallory v. Eyrich*, 922 F.2d 1273, 1282 (6th Cir. 1991) ("District courts have inherent power to reconsider

interlocutory orders and reopen any part of a case before entry of a final judgment. A district court may modify, or even rescind, such interlocutory orders." (internal citations omitted)).

We agree, moreover, with the district court's conclusion that the relevant balancing factors weigh in favor of unsealing the case. To reiterate, in making this determination, a court must balance the litigants' privacy interests against the public's right of access, recognizing our judicial system's strong presumption in favor of openness. Rudd offered scant evidence in favor of sealing the court's record. Even taking Rudd at its word regarding the serious business consequences at stake should this case be unsealed, more is required. As we have explained, "[s]imply showing that the information would harm the company's reputation is not sufficient to overcome the strong common law presumption in favor of public access to court proceedings and records." *Brown & Williamson*, 710 F.2d at 1179. That is especially true here, where the entity alleging harm from publicizing the mere existence of this case is the plaintiff—the party that chose to file suit.

In short, the harm that may befall Rudd should this case become public is simply not the sort of harm that sealing the court's record is aimed to prevent. Rudd cannot point to any trade secret, or privacy right of third parties, that a seal might legitimately protect. Indeed, many of Rudd's proffered reasons for sealing—including the possible reactions of its employees and current and future customers—cut in favor of public access: "[T]he greater the public interest in the litigation's subject matter, the greater the showing necessary to overcome the presumption of access." *Shane Grp.*, 2016 WL 3163073, at *3; *see also Baxter*, 297 F.3d at 546 (noting that, "[i]n civil litigation, only trade secrets, information covered by a recognized privilege (such as the attorney-client privilege), and information required by statute to be maintained in confidence (such as the name of a minor victim of a sexual assault)," is typically enough to overcome the presumption of access).

C.

Two counter-arguments raised by Rudd warrant brief discussion. The first is its contention that Deere "waived its right to challenge" the sealing order by "acquiesc[ing]" to filing under seal and failing to object as the case progressed. But as the magistrate judge

accurately stated, Deere "could not have waived the *public*'s First Amendment and common law right of access to court filings." The "court's obligation to keep its records open for public inspection is not conditioned on an objection from anybody." *Shane Grp.*, 2016 WL 3163073, at *5. Rather, the court has an independent "obligation to consider the rights of the public." *Knoxville News-Sentinel*, 723 F.2d at 475. This is true "even if neither party objects to the motion to seal." *Shane Grp.*, 2016 WL 3163073, at *4; *see also Brown & Williamson*, 710 F.2d at 1176 (noting that we may "reach the question" of the district court's seal "on our own motion."); *cf. Tri-Cty. Wholesale Distribs., Inc. v. Wine Grp., Inc.*, 565 F. App'x 477, 490 (6th Cir. 2012) (Gwin, J., concurring and dissenting in part) ("The First Amendment access right extends to court dockets, records, pleadings, and exhibits, and establishes a presumption of public access that can only be overcome by specific, on-the-record findings that the public's interest in access to information is overcome by specific and compelling showings of harm.").

Second, Rudd relies on one paragraph in our opinion in *Knoxville News-Sentinel* to argue that a different standard should guide the district court's discretion in cases where, as here, one party relies on a seal in filing its documents with the court. This is too thin a reed. In denying access to sealed court records in *Knoxville News-Sentinel*, we employed the traditional balancing test from *Brown & Williamson*, reasoning that sealing is appropriate "when interests of privacy outweigh the public's right to know," 723 F.2d at 474, and emphasizing that "[o]nly the most compelling reasons can justify non-disclosure of judicial records," *id.* at 476. We then discussed various federal statutes and regulations that protected records of the type sought by the requesting parties, and concluded that third-party bank customers had a strong privacy interest in keeping their bank records confidential, in contrast to the significant public interest at play in *Brown & Williamson*. *Id.* at 476–77. Only in a final addendum did we note that we also "must take account of the bank's initial reliance on the district court's protective order," and that in such situations "only 'extraordinary circumstances' or 'compelling need' warrant reversal of a protective order." *Id.* at 478 (quoting *FDIC v. Ernst & Ernst*, 677 F.2d 230, 232 (2d Cir. 1982)).

Even putting aside the clear factual distinctions between *Knoxville News-Sentinel* and this case—including that the sealing order in that case applied only to two documents, not, as here, the entire docket—our comment was far from a clear commandment that a district court should

jettison entirely the *Brown & Williamson* balancing test and shift the burden to the requesting party to show an exceptional need for unsealing court records. Rudd's logic proves too much. One party will almost always rely on a sealing order to some degree. Thus, as the magistrate judge noted, under Rudd's view, "[a]bsent extraordinary circumstances, [an] initial sealing decision would be irreversible." Moreover, Rudd's reading of our opinion in *Knoxville News-Sentinel* would render all of that opinion's previous analysis of the balancing-test factors entirely superfluous. A better understanding of our reasoning is apparent, however: a court should "take account" of a party's reliance, and any extraordinary circumstances or compelling need, in its application of the balancing test. *See, e.g., Johnson v. Corr. Corp. of Am.*, No. 3:12-CV-246-H, 2014 WL 3970115, at *2–3 (W.D. Ky. Aug. 13, 2014) (reasoning that "[e]ven litigants' reliance on the confidentiality of certain documents in reaching a court-approved settlement agreement fails to overcome the presumption of public access").

Any reliance on Rudd's part in this case falls short of what is necessary to overcome the strong public interest in favor of access to court records. Rudd can hardly claim unconditional reliance on a sealing order when Rudd itself initiated the action and brought its dispute with Deere into federal court. In fact, Rudd filed its complaint simultaneously with its motion to seal, without knowing whether the court would even grant the motion (and certainly not expecting that any seal would last indefinitely). The complaint then sat unsealed on the district court's docket for two weeks before the seal was entered, and Rudd has not alleged it suffered any harm during this period. Rudd invoked the powers of the federal courts to arm itself for its dispute with Deere; it cannot now claim exemption from the obligations of openness and public access concomitant with litigating in this forum.

IV.

For the foregoing reasons, we affirm the order of the district court vacating the sealing order.