NOT RECOMMENDED FOR PUBLICATION
File Name: 17a0119n.06
No. 16-1670

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| JACOB J. DANLEY; JEFFREY J. McINTYRE, JR., | ) | **FILED**<br>Feb 22, 2017<br>DEBORAH S. HUNT, Clerk |
| Plaintiffs-Appellants, | ) | |
| v. | ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN |
| ENCORE CAPITAL GROUP, INC.; MIDLAND CREDIT MANAGEMENT, INC.; MIDLAND FUNDING, LLC., | ) | |
| Defendants-Appellees. | ) | |

BEFORE: GILMAN, GRIFFIN, and STRANCH, Circuit Judges.

GRIFFIN, Circuit Judge.

Defendants purchased plaintiffs' stale debts and attempted to collect, in addition to the debts, post-"charge off" interest. In this action, plaintiffs claim that this practice violates federal and Michigan debt-collection laws. Based on arbitration provisions contained in plaintiffs' various account agreements, the district court compelled the parties to arbitrate, ruling that the agreements were enforceable and that the parties expressly authorized—via a delegation clause—an arbitrator to consider plaintiffs' various "gateway" challenges to the arbitration provisions. In a separate order, the district court sealed several documents on the basis that the documents fell within the purview of the parties' protective order. For the reasons set forth, we

affirm the district court's order compelling arbitration, but reverse the district court's order denying in part plaintiffs' motion to unseal documents.

I.

In the 2000s, plaintiffs Jacob Danley and Jeffrey McIntyre opened credit-card accounts (both with Citibank, and McIntyre additionally with Chase) and, after they stopped making payments on their respective accounts, their creditors "charged off" these debts. *See Stratton v. Portfolio Recovery Assocs., LLC*, 770 F.3d 443, 445 (6th Cir. 2014) (discussing "charging off" uncollectable consumer debts). Defendants purchased plaintiffs' debts years later, seeking to collect these debts *and* accrued interest post-charge off, totaling approximately $2,000 for each account.

Plaintiffs commenced this putative class action in 2015, claiming defendants' attempts to collect charged-off interest violates the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.*, and the Michigan Collection Practices Act, M.C.L. § 445.251, *et seq*. Defendants moved to compel arbitration based upon the binding arbitration agreements in plaintiffs' respective credit-card account agreements. These arbitration agreements provide that they are governed by the Federal Arbitration Act, are assignable and survive assignment, and contain what are known as "delegation provisions"—agreements "to arbitrate threshold issues concerning the arbitration agreement." *See Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 68 (2010).

Danley and McIntyre raised two main points in response to defendants' motion. First, they challenged defendants' reliance upon exemplar agreements and other records concerning plaintiffs' account activities and the assignment of their accounts to defendants to establish the existence of the arbitration agreements instead of the original agreements. Second, they argued

that, as set forth in the purchase agreements, defendants purchased only "the rights to debts" and not the financial institutions' "contract documents" that include the arbitration agreements.

The district court disagreed and ordered arbitration. On the first issue, it ruled that the exemplar agreements were more than satisfactory, especially because plaintiffs did "not come forward with any evidence to rebut that the agreements that have been produced are the same as those entered between plaintiffs and the original creditors." Regarding the second issue, it concluded that plaintiffs did "not mention, let alone challenge the delegation provision[s,]" and thus, under *Rent-A-Center*, referred plaintiffs' enforceability arguments to the arbitrator.

Plaintiffs also challenged the district court's order sealing certain documents. In support of their motion to compel arbitration, defendants filed under seal various documents subject to the parties' stipulated protective order regarding the sale and assignment of the debts. They did so after seeking plaintiffs' stipulation to file these documents under seal, to which plaintiffs did not respond. It appears that the district court advised defendants that because the parties agreed to a protective order, there was "no need to submit a motion, nor stipulated order to file items under seal." Plaintiffs moved to unseal some of these documents, arguing that the terms of the parties' protective order provided that "no document may be filed under seal without leave of court" and that the district court had not so provided. The district court granted in part and denied in part plaintiffs' motion (because defendants conceded some should not have been sealed). In doing so, the district court reasoned as follows:

> The stipulated protective order in this case spells out exactly how a dispute over a protected designation is to be handled by the parties. *It is clear in this case that plaintiffs did not follow the terms of the stipulated protective order, jumping straight to filing a motion to unseal without trying to work the issue out with opposing counsel and without certifying the issue to the court.* The court finds that plaintiffs therefore waived their right to object to the protected designation of the documents at issue.

> With regard to filing Protected Materials and Information with the court, *the stipulated protective order provides that to the extent any information to be filed with the court reveals information claimed to be confidential under the terms of the protective order, it must be filed under seal.* "However, no document may be filed under seal without leave of court." The term "leave of court" refers to judicial permission to follow a nonroutine procedure. While this could be accomplished with the filing of a motion seeking leave, as urged by plaintiffs, the fact that defendants followed a different path to filing the sealed documents does not require the court to order that the documents be unsealed. *Considering the matter in the manner in which it was raised by plaintiffs in this case, the court accepts defendants' filing of Exhibits A, B, C, H, I, L, and M under seal in support of their motion to compel arbitration.* To their credit, in their response brief, defendants agree that Exhibits D, G, J, K, and N are not properly designated as confidential because they had previously been filed as unprotected exhibits to the original motion to compel arbitration. As such, those exhibits shall be re-filed without the confidential designation.

(Emphasis added.)

Plaintiffs appeal the orders granting arbitration and denying their motion to unseal documents.

## II.

The Federal Arbitration Act "embodies the national policy favoring arbitration and places arbitration agreements on equal footing with all other contracts." *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006). It provides that a "written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, . . . or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Courts must, consistent with this text, "'rigorously enforce' arbitration agreements according to their terms." *Am. Express Co. v. Italian Colors Rest.*, 133 S. Ct. 2304, 2309 (2013) (citation omitted).

On de novo review, *Huffman v. Hilltop Cos.*, 747 F.3d 391, 394 (6th Cir. 2014), we can quickly dispense with the argument that the district court erred in relying upon an exemplar agreement and other pertinent account records defendants used to establish the validity of the arbitration agreement for McIntyre's Chase account. In order to defeat defendants' motion to compel arbitration, it was McIntyre's burden to "show a genuine [dispute] of material fact as to the validity of the agreement to arbitrate." *Great Earth Cos., Inc. v. Simons*, 288 F.3d 878, 889 (6th Cir. 2002). This "showing mirrors that required to withstand summary judgment in a civil suit." *Id.* Thus, we must determine, viewing the facts in the light most favorable to McIntyre, "whether the evidence presented is such that a reasonable finder of fact could conclude that no valid agreement to arbitrate exists." *Id.*

The district court correctly ruled McIntyre did not meet this burden, and we need not add to its analysis. Moreover, McIntyre concedes in his appellate brief that he "did not demonstrate that the exemplar was not his agreement." Instead, McIntyre asks that we require defendants to "complete the circle" and, barring proof of the original agreement, deny arbitration. But it was McIntyre's burden to present facts such that a reasonable factfinder could conclude the arbitration agreement did not exist. *Id.* Upon presentment of the exemplar agreement, McIntyre's account records, and other business records regarding the transfer of his account to defendants, the district court correctly concluded McIntyre did not satisfy his burden.

## III.

Normally, it is within the district court's province to "determine whether the parties have agreed to arbitrate the dispute at issue." *Id.* (citation omitted). In particular, challenges to the formation of an arbitration agreement (whether it was in fact agreed to by the parties) are "generally for courts to decide." *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 296

(2010). Here, Danley and McIntyre had the opportunity to challenge the formation of their arbitration agreements. The district court took the contractual relationship seriously, requiring defendants to place substantial documentary evidence into the record before proceeding with motion practice. On appeal, however, Danley and McIntyre do not clearly argue that their challenges go to the formation of the arbitration agreements, and they do not cite *Granite Rock* or explain its principles.

Danley and McIntyre do raise enforceability issues that relate to the validity of the arbitration agreements. Whether a court or an arbitrator decides the validity of an arbitration agreement with a delegation provision is governed by *Rent-A-Center*. In *Rent-A-Center*, the Supreme Court reiterated that "parties can agree to arbitrate 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." 561 U.S. at 68–69. The *Rent-A-Center* arbitration agreement provided that it was for an arbitrator, not any other forum, to decide "any dispute relating to the interpretation, applicability, enforceability or formation of th[e] Agreement, including . . . any claim that all or any part of this Agreement is void or voidable." *Id.* at 66. Such a "delegation provision" is a separately enforceable provision under the Federal Arbitration Act, held the Supreme Court, because under the Federal Arbitration Act, "an arbitration provision is severable from the remainder of the contract." *Id.* at 70–71 (citation omitted). Put differently, "a party's challenge to another provision of the contract, or to the contract as a whole, does not prevent a court from enforcing a specific agreement to arbitrate." *Id.* at 70. And this severability rule applies even if the delegation provision is contained *within* the arbitration agreement. *Id.* at 72. "That," wrote Justice Scalia for the majority, "makes no difference." *Id.*

Delegation to an arbitrator of gateway issues does not mean that a federal court should automatically grant a motion to compel arbitration, because the party seeking to avoid arbitration may still raise defenses to the agreement to delegate. *Id.* Here, however, one absolute precludes granting plaintiffs' requested relief: a party seeking to avoid the effects of a delegation provision must "challenge[] the delegation provision specifically." *Id.* If that party fails to do so, a court must treat the delegation provision as valid and enforce it as written. *Id.*

In the present case, as in *Rent-A-Center*, the parties "clearly and unmistakably" provided for an arbitrator to determine various "gateway issues" relative to their claims. *Id.* at 69 n.1, 70; *AT&T Techs., Inc. v. Comm'ns Workers of Am.*, 475 U.S. 643, 649 (1986); *see also Milan Express Co., Inc. v. Applied Underwriters Captive Risk Assur. Co., Inc.*, 590 F. App'x 482, 484–85 (6th Cir. 2014). The delegation provision at issue for the Citibank accounts state that "[a]ll claims relating to your account, a prior related account, or our relationship are subject to arbitration, *including Claims regarding the application, enforceability, or interpretation of this Agreement and this arbitration provision*." (Emphasis added.) McIntyre's Chase account terms are similar: "Claims subject to this Arbitration Agreement *include Claims regarding the applicability of this Arbitration Agreement or the validity of the entire Cardmember Agreement or any prior Cardmember Agreement*." (Emphasis added.) Plaintiffs' various arguments regarding the validity of the assignment of the arbitration agreements as a whole—whether Chase bank voluntarily forfeited its right to enforce the arbitration agreement (and thus did not transfer it to defendants), whether the Uniform Commercial Code permits assignment of arbitration agreements, and whether defendants purchased just plaintiffs' debts and not their underlying purchase agreements—all fit well within the language of the delegation provisions.

Like the petitioner in *Rent-A-Center*, Danley and McIntyre did not acknowledge their delegation provisions, let alone challenge them (below, or on appeal). They also admit that they "never argued that there were provisions in or parts of the arbitration agreements, themselves"—*i.e.*, the delegation provisions—"that were not enforceable." Given this concession, the district court correctly concluded the Supreme Court's decision in *Rent-A-Center* precludes challenges to the enforceability of the delegation provisions. 561 U.S. at 72–73.

IV.

Finally, plaintiffs raise an issue recently addressed by our court: the need for the district court to give adequate and specific reasons for sealing court records. *See, e.g.*, *Rudd Equip. Co., Inc. v. John Deere Constr. & Forestry Co.*, 834 F.3d 589, 593 (6th Cir. 2016); *Shane Grp., Inc. v. Blue Cross Blue Shield of Mich.*, 825 F.3d 299, 305–09 (6th Cir. 2016); *United States v. DeJournett*, 817 F.3d 479, 484 (6th Cir. 2016). Here, the district court authorized the sealing of seven documents without "set[ting] forth specific findings and conclusions 'which justify nondisclosure to the public.'" *Shane Grp.*, 817 F.3d at 306 (quoting *Brown & Williamson Tobacco Corp. v. F.T.C.*, 710 F.2d 1165, 1176 (6th Cir. 1983)). We review this decision for abuse of discretion. *Rudd Equip. Co.*, 834 F.3d at 593. This "decision is not accorded the deference that standard normally brings," however, given the "strong presumption in favor of openness as to court records." *Shane Grp.*, 825 F.3d at 305–06.

In *Shane Group*, issued after the district court's ruling, we held that "a court's failure to set forth [its] reasons . . . as to why the interests in support of nondisclosure are compelling, why the interests supporting access are less so, and why the seal itself is no broader than necessary . . . *is itself grounds to vacate an order to seal*." *Id.* at 306 (emphasis added). In the present case, the district court made no such findings and instead criticized plaintiffs for failing to follow

the terms of the parties' protective order and for failing to work out their differences with defendants. However, despite plaintiffs' actions or inactions, a district court has its own "obligation to explain the basis for sealing court records [that] is independent of whether anyone objects to it." *Id.* Defendants' attempts to distinguish *Shane Group* are not convincing.

V.

For these reasons, we affirm the district court's order compelling arbitration, but reverse the district court's order granting in part and denying in part plaintiffs' motion to unseal, and remand for further proceedings consistent with this opinion.