RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 21a0055p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────────

NICOLE MARIE SWIGER,

*Plaintiff-Appellee*,

*v.*

JOEL ROSETTE, et al.,

*Defendants*,

KENNETH REES,

*Defendant-Appellant*.

No. 19-2470

─────────────────

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 2:19-cv-12014—Bernard A. Friedman, District Judge.

Argued:  January 29, 2021

Decided and Filed:  March 4, 2021

Before:  COOK, GRIFFIN, and LARSEN, Circuit Judges.

─────────────────

## COUNSEL

**ARGUED:**  David F. Herman, ARMSTRONG TEASDALE LLP, Philadelphia, Pennsylvania, for Appellant.  Allan Falk, ALLAN FALK, PC, Okemos, Michigan, for Appellee. **ON BRIEF:** David F. Herman, Richard L. Scheff, Jonathan P. Boughrum, Michael C. Witsch, ARMSTRONG TEASDALE LLP, Philadelphia, Pennsylvania, for Appellant.  Allan Falk, ALLAN FALK, PC, Okemos, Michigan, for Appellee.  Patrick O. Daugherty, VAN NESS FELDMAN LLP, Washington, D.C., for Amicus Curiae.

_____

**OPINION**

_____

COOK, Circuit Judge.  Plaintiff Nicole Swiger and defendant Kenneth Rees disagree on whether they must arbitrate their dispute over an allegedly predatory loan.  Because Swiger's arbitration agreement includes an unchallenged provision delegating that question to an arbitrator, the district court exceeded its authority when it undertook that task and found the agreement unenforceable.  We REVERSE and REMAND with instructions to stay the case pending arbitration.

**I.**

Swiger alleges that she fell victim to an illegal "rent-a-tribe" scheme when she accepted a $1200 loan at an interest rate exceeding 350% from online lender Plain Green LLC—an entity owned by and organized under the laws of the Chippewa Cree Tribe of the Rocky Boy's Reservation, Montana.  She paints Rees as the "mastermind" behind this scheme, alleging that he and his company, Think Finance LLC, used Plain Green with its benefit of tribal sovereign immunity as a front to shield Think Finance and him from applicable state and federal law.  When Swiger signed the loan contract, she affirmed that Plain Green enjoys "immun[ity] from suit in any court," and further, that the loan "shall be governed by the laws of the tribe," not "the laws of your home state or any other state."

She also agreed to an arbitration provision, providing that "any dispute . . . related to this agreement will be resolved through binding arbitration" under tribal law, subject to review only in tribal court.  The agreement defines "dispute" as "any claim or controversy of any kind between you and Plain Green or otherwise involving this Agreement or the Loan," including "any issue concerning the validity, enforceability, or scope of this Agreement or this Agreement to Arbitrate."

Seven months after accepting the loan, Swiger alleged that she repaid $1170.54 of the $1200 loan but still owed $1922.37. She then sued Rees and two Plain Green executives,[1] complaining of the loan's illegality under Michigan and federal law, as well as violations of the Racketeer Influenced and Corrupt Organizations Act and consumer protection laws. She sought actual and treble damages, an injunction preventing further violations, and a judgment declaring the arbitration agreement void and unenforceable.

In response, Rees filed a motion to stay the case in favor of arbitration. He argued that because Swiger agreed through a "delegation clause" to arbitrate issues "concerning the validity, enforceability, or scope" of the agreement, the court should stay the proceedings and compel arbitration of even threshold arbitrability questions. Swiger opposed the motion, urging generally the agreement's unenforceability.

The district court denied the motion, maintaining that the enforceability of the arbitration agreement "has already been litigated, and decided against Rees, in a similar case commenced in Vermont." (R. 14 at PageID#: 735 (citing *Gingras v. Think Finance, Inc.*, 922 F.3d 112 (2d Cir. 2019).) The court quoted the Second Circuit's opinion at length, "adopt[ed] [its] reasoning," and denied Rees's motion "on the same grounds." (*Id*. at PageID#: 737.) It further found that "Rees is collaterally estopped from relitigating this issue, as he was a party in *Gingras*, and the issue is identical in both cases and was fully litigated in *Gingras*." (*Id.*)

Rees appeals, maintaining that the district court erred by disregarding the delegation clause.

**II.**

As an initial matter, Swiger challenges this court's appellate jurisdiction. Ordinarily, we may hear only appeals of "final decisions." 28 U.S.C. § 1291. The Federal Arbitration Act (FAA) creates an exception to this general rule, allowing appellate review of interlocutory orders refusing to stay and compel arbitration of actions governed by a written arbitration agreement. *See* 9 U.S.C. § 16(a). Rees invoked both § 3 and § 4 of the FAA in requesting a stay of the

---

[1]Swiger voluntarily dismissed the Plain Green defendants, leaving Rees as the sole defendant.

district court proceedings and an order compelling arbitration; § 16(a)(1)(A) and § 16(a)(1)(B) provide for appellate review of those requests. *See, e.g.*, *Stutler v. T.K. Constructors Inc.*, 448 F.3d 343, 345 (6th Cir. 2006); *Watson Wyatt & Co. v. SBC Holdings, Inc.*, 513 F.3d 646, 648–49 (6th Cir. 2008).

But Swiger argues that the FAA provides no such authority here because her arbitration agreement displaces the FAA in favor of tribal law, rendering the FAA's jurisdictional provision inapplicable. Not so.

In *Arthur Andersen LLP v. Carlisle*, the Supreme Court clarified that appellate jurisdiction under § 16 "must be determined by focusing upon the category of order appealed from" rather than on the merits of the underlying motion. 556 U.S. 624, 628 (2009) (quoting *Behrens v. Pelletier*, 516 U.S. 299, 311 (1996)). So, any litigant who requests relief under § 3 or § 4 "is entitled to an immediate appeal from denial of that motion—regardless of whether the litigant is in fact eligible for a stay." *Id*. at 627.

What is more, Swiger's argument rests on a flawed legal premise. The FAA applies to arbitration agreements in any "contract evidencing a transaction involving commerce." 9 U.S.C. § 2. True, parties may agree to abide by rules of arbitration other than the FAA—as Plain Green purported to do here with tribal law—through unambiguous choice-of-law provisions. *See Savers Prop. & Cas. Ins. Co. v. Nat'l Union Fire Ins. Co.*, 748 F.3d 708, 715–16 (6th Cir. 2014). But rather than rendering the FAA entirely inapplicable, enforcing choice-of-law provisions "is fully consistent with the goals of the FAA." *Id*. (quoting *Muskegon Cent. Dispatch 911 v. Tiburon, Inc.*, 462 F. App'x 517, 522–23 (6th Cir. 2012)). As the Third Circuit aptly put it in *Ario v. Underwriting Members of Syndicate 53 at Lloyds for 1998 Year of Account*, "while parties may opt out of the FAA's default rules, they cannot 'opt out' of FAA coverage in its entirety because it is the FAA itself that authorizes parties to choose different rules in the first place." 618 F.3d 277, 288 (3d Cir. 2010); *see also Savers Prop. & Cas. Ins. Co.*, 748 F.3d at 716 (favorably citing *Ario*); *Muskegon Cent. Dispatch 911*, 462 F. App'x at 523 (same). In short, the FAA applies and we have jurisdiction under § 16 to consider Rees's appeal.

Swiger also argues that Rees lacks standing to invoke the arbitration agreement. But as explained below, that issue goes to the merits of arbitrability, not our jurisdiction. *See Blanton v. Domino's Pizza Franchising LLC*, 962 F.3d 842, 848 (6th Cir. 2020).

**III.**

We review the denial of a motion to compel arbitration de novo. *Nestle Waters N. Am., Inc. v. Bollman*, 505 F.3d 498, 501–02 (6th Cir. 2007).

Generally, when asked to compel arbitration under a contract, a court determines whether the parties agreed to arbitrate their dispute. *See Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000). The FAA, however, allows parties to agree that an arbitrator, rather than a court, will determine "'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 68–69 (2010). Such an agreement, commonly known as a delegation clause, requires "'clear and unmistakable' evidence that the parties agreed to have an arbitrator decide" arbitrability. *Blanton*, 962 F.3d at 844 (quoting *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)); *see also Rent-A-Center*, 561 U.S. at 69 n.1.

Courts view delegation clauses as "simply an additional, antecedent agreement the party seeking arbitration asks the federal court to enforce." *Rent-A-Center*, 561 U.S. at 70. A valid delegation clause precludes courts from resolving any threshold arbitrability disputes, even those that appear "wholly groundless." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 529 (2019); *see also McGee v. Armstrong*, 941 F.3d 859, 866 (6th Cir. 2019).

Only a specific challenge to a delegation clause brings arbitrability issues back within the court's province. *Rent-A-Center*, 561 U.S. at 72 (unless a party "challenge[s] the delegation provision specifically," the court must "leav[e] any challenge to the validity of the Agreement as a whole for the arbitrator"). A party seeking to avoid the effects of a delegation clause should raise a challenge at least in its opposition to a motion to compel arbitration. *Id.* If a party fails to "acknowledge their delegation provision[], let alone challenge [it] (below, or on appeal)," they forfeit any such challenge. *Danley v. Encore Cap. Grp., Inc.*, 680 F. App'x 394, 399 (6th Cir. 2017). A party may attack a delegation clause using the same arguments it raises against the

entire arbitration agreement, but merely challenging the entire agreement will not suffice. *See Rent-A-Center*, 561 U.S. at 74 (surmising that if the party challenged as unconscionable the delegation clause itself rather than just the entire arbitration agreement, then the court could have considered that challenge); *MacDonald v. CashCall, Inc.*, 883 F.3d 220, 226–27 (3d Cir. 2018).

Here, Swiger's agreement requires her to arbitrate "any issue concerning the validity, enforceability, or scope of this . . . Agreement to Arbitrate." This constitutes a delegation clause, clearly and unmistakably showing that the parties agreed to arbitrate issues of arbitrability. *See, e.g.*, *Danley*, 680 F. App'x at 398 (parties clearly and unmistakably agreed that an arbitrator would determine gateway arbitrability issues through clause requiring arbitration of "[a]ll claims relating to your account, . . . *including Claims regarding the application, enforceability, or interpretation of this Agreement and this arbitration provision*").

Swiger failed to specifically challenge her delegation clause. Her complaint requests a judgment declaring that "arbitration clauses in Plain Green's loan documents are void and unenforceable." She contends that Plain Green employed the arbitration agreement to "avoid legal liability" and:

> That arbitration agreement is unenforceable because it is unconscionable and its supposed remedy illusory, because, although the arbitration agreements references [sic] the Federal Arbitration Act as something to which the parties "will look", it is "Tribal Law" that governs, the agreement does not waive and attempts to preserve tribal immunity, purporting to give Defendants the ability to void any arbitration award by simply asserting tribal immunity *after the fact*, or submitting the arbitrator's decision to *de novo* review in a tribal court, and also by concealing prohibited waiver of federal and state statutory rights under the guise of a choice of laws clause.

(Compl. at ¶¶ 160–61 (internal citations and footnote omitted).) Her complaint never mentions the delegation clause, but repeatedly refers simply to "the agreement."

Rees answered by moving to stay district court proceedings in favor of arbitration, arguing that the "express delegation clause" required the court "to send any dispute over arbitrability to an arbitrator." (R. 5 at PageID#: 99.) In her response to that motion, Swiger challenged the enforceability of the whole arbitration agreement and nowhere mentioned the delegation clause.

The district court denied the motion, also without mentioning the delegation clause. In his opening brief on appeal, Rees again invoked the delegation clause. Swiger filed her response, again ignoring the delegation clause. In short, Swiger has not once mentioned, let alone challenged, the delegation clause. Accordingly, the district court should have enforced it and referred the case to arbitration. *See Rent-A-Center*, 561 U.S. at 72; *Danley*, 680 F. App'x at 399.

Notably, the delegation clause encompasses Swiger's argument that Rees, who did not sign Swiger's agreement with Plain Green, lacked ability to invoke the arbitration agreement. Swiger urges the court to resolve that issue, viewing it as a question of standing. Rees, however, argues that his ability to invoke the arbitration agreement constitutes an issue of enforceability that "must be considered by an arbitrator in the presence of a delegation provision." (Reply Br. at 8.) Rees's argument persuades.

As explained by one district court within our circuit, this issue presents a "logical conundrum" because "[e]ven with a delegation clause, courts must determine whether a contract exists at all," and "[i]f the nonsignatories are not parties to the contract, then the Plaintiff has no agreement with them." *De Angelis v. Icon Ent. Grp. Inc.*, 364 F. Supp. 3d 787, 796 (S.D. Ohio 2019). But "[w]hether a nonsignatory can enforce the arbitration agreement is a question of the enforceability of the arbitration clause, as to that defendant." *Id*. at 797.

We recently addressed this issue in *Blanton*. There, a former employee of a Domino's Pizza franchise sued Domino's Pizza. 962 F.3d at 844. Domino's Pizza moved to compel arbitration under an agreement between the plaintiff and his former employer. *Id*. The plaintiff opposed the motion, "arguing that Domino's couldn't enforce the arbitration agreements because the company hadn't signed the agreements (only their franchises had)." *Id*. But the court concluded that the arbitrator must resolve that issue because the contract delegated questions of arbitrability; the parties agreed that Domino's Pizza's ability to enforce the agreement "involve[d] a 'question of arbitrability.'" *Id*. at 848.

Though the plaintiff in *Blanton* conceded the issue, the court signaled its agreement that a nonsignatory's ability to enforce an arbitration agreement concerned a question of arbitrability,

favorably citing three circuit cases so holding: *Eckert/Wordell Architects, Inc. v. FJM Props. of Willmar, LLC*, 756 F.3d 1098, 1100 (8th Cir. 2014); *Brittania-U Nigeria, Ltd. v. Chevron USA, Inc.*, 866 F.3d 709, 715 (5th Cir. 2017); and *Apollo Comput., Inc. v. Berg*, 886 F.2d 469, 473–74 (1st Cir. 1989). We follow suit and find that whether Rees can enforce the arbitration agreement against Swiger presents a question of arbitrability that Swiger's arbitration agreement delegated to an arbitrator.

Notably, today's opinion addresses only *who* resolves Swiger's challenges to her arbitration agreement. As stated in *Blanton*: "Keep in mind that the question here is quite narrow. It's not about the *merits* of the case. It's not even about *whether* the parties have to arbitrate the merits. Instead, it's about *who should decide* whether the parties have to arbitrate the merits." 962 F.3d at 852. As Swiger points out, several circuits have found similar arbitration agreements unenforceable. *See, e.g.*, *Williams v. Medley Opportunity Fund II, LP*, 965 F.3d 229, 244 (3d Cir. 2020); *Gibbs v. Sequoia Cap. Operations, LLC*, 966 F.3d 286, 294 (4th Cir. 2020); *Gingras*, 922 F.3d at 127–28; *MacDonald*, 883 F.3d at 232; *Parm v. Nat'l Bank of Cal., N.A.*, 835 F.3d 1331, 1338 (11th Cir. 2016); *Hayes v. Delbert Servs. Corp.*, 811 F.3d 666, 675 (4th Cir. 2016). But her failure to specifically challenge the delegation clause prevents us from reaching the issues addressed in those cases, where the plaintiffs challenged their delegation clauses. *See Williams*, 965 F.3d at 237 ("Plaintiffs contested the delegation clause . . . ."); *Gibbs*, 966 F.3d at 292 ("[T]he borrowers specifically challenged the delegation provision . . . ."); *Gingras*, 922 F.3d at 126 (plaintiff's "specific attack on the delegation provision is sufficient to make the issue of arbitrability one for a federal court"); *MacDonald*, 883 F.3d at 227 ("MacDonald specifically challenged the delegation clause."); *Parm*, 835 F.3d at 1334–35 ("[O]ur review is limited, at least initially, to Parm's direct challenges to th[e delegation] clause."); *Hayes*, 811 F.3d at 671 n.1 ("Hayes . . . challenged the validity of that delegation with sufficient force and specificity to occasion our review."). The district court erred in overlooking the delegation clause and should have granted Rees's motion to stay Swiger's case in favor of arbitration.

**IV.**

We REVERSE and REMAND with instructions to stay the case pending arbitration.