NOT RECOMMENDED FOR PUBLICATION
File Name: 25a0197n.06

Case No. 24-1595

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

FILED

Apr 10, 2025

KELLY L. STEPHENS, Clerk

|  |  |  |
|---|---|---|
| COREY TUCKER, | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE EASTERN DISTRICT OF |
| UNITED WHOLESALE MORTGAGE, INC., | ) | MICHIGAN |
| Defendant-Appellee. | ) | OPINION |
| | ) | |

Before: SUTTON, Chief Judge; BATCHELDER and RITZ, Circuit Judges.

SUTTON, Chief Judge. Corey Tucker, an African-American man, sued his employer, United Wholesale Mortgage, after his co-workers allegedly made racist remarks to him and his supervisors allegedly fired him for complaining about it. The district court granted United's motion to compel arbitration and to dismiss his complaint. We affirm.

I.

Tucker worked as an account executive for United Wholesale Mortgage. He alleges that his co-workers made racist and insensitive comments about him, played pranks at his expense, then discouraged him from reporting them to human resources. Tucker reported one of the incidents anyway. The company, as he tells it, retaliated by abruptly terminating him for "walking around" when he was supposed to be "mak[ing] phone calls" to prospective clients. R.1 at 4–6. Company officials did not fire his white co-workers for doing the same.

That prompted this lawsuit. Tucker brought claims under 42 U.S.C. § 1981, Title VII, and Michigan's Elliott-Larsen Civil Rights Act. United moved to enforce its arbitration agreement with Tucker and to dismiss the complaint. It attached a signed employment agreement with an arbitration clause, which says that Tucker and United must submit any dispute arising "out of the employment relationship," including "ANY DISCRIMINATION OR OTHER STATUTORY CLAIMS," to arbitration. R.6-1 at 16. In view of this agreement, the district court granted United's motion to dismiss the complaint and compelled the parties to arbitrate.

II.

We review decisions compelling arbitration afresh. *Great Earth Cos. v. Simons*, 288 F.3d 878, 888 (6th Cir. 2002). In the context of a motion to dismiss under Civil Rule 12(b)(6), the district court must focus on the allegations pleaded in the complaint. *Bates v. Green Farms Condo. Ass'n*, 958 F.3d 470, 483 (6th Cir. 2020). If the court looks beyond the complaint to an arbitration agreement or other evidence outside the four corners of the complaint, we treat it like a summary judgment motion under Civil Rule 56. *Boykin v. Fam. Dollar Stores of Mich., LLC*, 3 F.4th 832, 838 (6th Cir. 2021).

The district court relied on evidence outside the complaint: the employment agreement attached to United's motion and Tucker's affidavit attached to his reply brief. It also used the language of summary judgment to conclude that Tucker's claims "do not create a genuine issue of material fact." R.13 at 11. Civil Rule 56 thus guides our handling of this appeal.

At issue is whether Tucker signed a binding arbitration agreement covering the dispute. Under Rule 56, United bears the "initial duty" to present evidence allowing a "trier of fact to find

all required elements of a contract." *Boykin*, 3 F.4th at 839. If United does so, Tucker must establish a "genuine" dispute over whether a valid arbitration contract governs the case. *Id.*

The Federal Arbitration Act frames the case after that. An agreement "to settle by arbitration a controversy . . . arising out of such contract or transaction," it says, is "valid, irrevocable, and enforceable." 9 U.S.C. § 2. This imperative "reflects the fundamental principle that arbitration is a matter of contract." *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 67 (2010). Because arbitration delayed is arbitration denied, Congress urges us to move such cases "out of court and into arbitration as quickly and easily as possible." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 22 (1983).

The existence of an arbitration clause leaves this court with a modest role. We consider only issues "relating to the making and performance of the agreement to arbitrate," *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404 (1967), such as whether a valid contract exists and whether it covers Tucker's claims. In answering this threshold question, we look to state law, *Fazio v. Lehman Bros.*, 340 F.3d 386, 393 (6th Cir. 2003), including whether "generally applicable contract defenses" invalidate the agreement, *Dr.'s Assocs., Inc. v. Casarotto*, 517 U.S. 681, 686–87 (1996).

The parties agree that Michigan law applies. It says that a contract requires a valid offer and acceptance. *See McMillon v. City of Kalamazoo*, 983 N.W.2d 79, 81 (Mich. 2023). If a signed agreement exists, only some kinds of denials raise a genuine dispute of material fact. It does not suffice, for example, for a claimant merely to testify that he "does not 'remember' signing an arbitration contract or receiving information about arbitration." *Boykin*, 3 F.4th at 839–40; *Tinder v. Pinkerton Sec.*, 305 F.3d 728, 735–36 (7th Cir. 2002). By contrast, an "unequivocal denial" that

the individual signed the agreement may create a genuine dispute over whether someone agreed to arbitrate. *Boykin*, 3 F.4th at 840 (quotation omitted).

If a valid arbitration agreement exists, we must determine its scope. As a matter of federal and Michigan law, this court resolves "any doubts concerning the scope of arbitrable issues" "in favor of arbitration." *Moses H. Cone*, 460 U.S. at 24–25; *Fromm v. Meemic Ins.*, 690 N.W.2d 528, 531 (Mich. Ct. App. 2004). That presumption grows stronger when an "extremely broad" arbitration clause embraces "any controversy arising out of" the contract at issue. *Nestle Waters N. Am., Inc. v. Bollman*, 505 F.3d 498, 505 (6th Cir. 2007) (quotation omitted). We will exclude a claim only in the face of the "positive assurance that the arbitration clause" excludes it. *See id.* at 504 (quotation omitted).

United met its initial burden of establishing an agreement to arbitrate. It supplied the affidavit of a human-resources officer attesting that Tucker created a profile on its online system for hiring and onboarding employees. After using that profile, Tucker signed an employment agreement. The agreement required employees to arbitrate every "material dispute" that "arises out of the employment relationship." R.6-1 at 16. To emphasize the point, it warned that a person signing the agreement "ACKNOWLEDGES THAT HE OR SHE IS GIVING UP THE RIGHT TO A TRIAL IN A COURT OF LAW AS TO ANY DISCRIMINATRION OR OTHER STATUTORY CLAIMS," and must instead pursue them in "BINDING ARBITRATION." R.6-1 at 16. At the bottom, the contract contained a checkbox and a warning that clicking it was "equivalent to a handwritten signature." R.6-1 at 18; *see* Mich. Comp. Laws § 450.837(1) (giving legal effect to electronic signatures). Tucker signed the contract by clicking the checkbox on December 16, 2021.

This expansive arbitration agreement covers all discrimination or other statutory claims arising from his job with United Wholesale. It includes Tucker's workplace discrimination and retaliation claims under 42 U.S.C. § 1981, Title VII, and the Elliott-Larsen Civil Rights Act. *See Rent-A-Ctr.*, 561 U.S. at 65 (sending a § 1981 claim to arbitration); *Willis v. Dean Witter Reynolds, Inc.*, 948 F.2d 305, 309 (6th Cir. 1991) (sending a Title VII claim to arbitration); *Rembert v. Ryan's Fam. Steak Houses, Inc.*, 596 N.W.2d 208, 210 (Mich. Ct. App. 1999) (sending a Civil Rights Act claim to arbitration).

There is no genuine dispute that Tucker accepted the agreement. Faced with United's documents, he presents only an affidavit that he "do[es] not recall signing an arbitration agreement." R.7-1 at 3. That bare assertion is precisely the kind of "convenient memory lapse[]" insufficient to create a genuine factual dispute that precludes summary judgment. *Boykin*, 3 F.4th at 839. Otherwise, a bald disclaimer of memory would permit a plaintiff to access a trial every time, undermining the virtues of "speed and simplicity and inexpensiveness" Congress embraced through the Federal Arbitration Act. *Lamps Plus, Inc. v. Varela*, 587 U.S. 176, 185 (2019) (quotation omitted).

Tucker resists this conclusion. He claims that he "was never told" what he was signing, did not "understand the document or its implications," and lacked "adequate time to review all the employment documents." R.7-1 at 3. Tucker's contention that he did not understand the agreement, as an initial matter, presupposes that he did sign it and thus rests awkwardly next to his disavowal. Even so, the argument fails anyway. Because Michigan courts presume that people read what they sign, "one who signs a contract" may not turn around and renounce it by saying "that he did not read it, or that he supposed it was different in its terms." *Farm Bureau Mut. Ins. of Mich. v. Nikkel*, 596 N.W.2d 915, 920 (Mich. 1999) (quotation omitted). Notice about the scope

and meaning of a contract comes from its words, *id.*, which in this instance use capitalized terms to explain its broad coverage. Nor does Tucker's naked statement that he lacked adequate time, clothed with no details about how much time he *did* have to sign his contract, create a genuine dispute that fraud or duress vitiates the contract. *See Meemic Ins. v. Fortson*, 954 N.W.2d 115, 124–25 (Mich. 2020) (fraud); *Beachlawn Bldg. Corp. v. City of St. Clair Shores*, 121 N.W.2d 427, 429–30 (Mich. 1963) (duress).

Tucker suggests that the agreement, insofar as it required arbitrating his Elliott-Larsen claims, was "procedurally unfair" and invalid under Michigan law. *See Rembert*, 596 N.W.2d at 224. But he forfeited this argument by failing to raise it before the district court. *Swiger v. Rosette*, 989 F.3d 501, 505–06 (6th Cir. 2021). Nor would it have made a difference anyway. Tucker's claim that he lacked notice supplies no detail or other support. It amounts to speculation at worst and merely reprises his earlier arguments at best. *See Lewis v. Philip Morris Inc.*, 355 F.3d 515, 533 (6th Cir. 2004).

Tucker insists that United failed to inform him about the arbitration clause until he sued. That doesn't matter. He does not identify any principle of Michigan law that an employer must remind employees—a second time—of the written terms of a signed contract.

Tucker in the alternative contests the scope of the agreement. In claiming that his Title VII claims are not arbitrable, he faces the stiff winds of contrary precedent. Regrettably for Tucker, we have already held that arbitration agreements may cover Title VII claims. *Willis*, 948 F.2d at 312.

As for his state claims, Tucker urges us to hold the case in abeyance and wait for the Michigan Supreme Court to decide a pending case about whether "claims under the Elliott-Larsen Civil Rights Act" "may be subjected to mandatory arbitration as a condition of employment under

Michigan law." *Saidizand v. Gojet Airlines*, 991 N.W.2d 208 (Mich. 2023) (mem.). We decline the request. To the extent Tucker thinks that Michigan will "prohibit[] outright the arbitration of a particular type of claim, the analysis is straightforward: The conflicting rule is displaced by the [Federal Arbitration Act]." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 341 (2011). To the extent Tucker thinks that the Michigan Supreme Court will disqualify certain contracts that transgress "general rules" of procedural fairness under Michigan law, *Rembert*, 596 N.W.2d at 211, he has not established any likelihood that such a ruling would cover his circumstances.

We affirm.